COMMONWEALTH *vs.* WALTER N. SNOW.

SAME *vs.* SAME.

Franklin.     October 2, 1933. — November 27, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Trust,* What constitutes. *Larceny.*

Where a company issued a certificate of deposit stating that it had received from the person to whom the certificate was issued a certain sum "to be invested" in a certain kind of property, and reciting that it was a "Certificate of Deposit for investment only," the company agreed to pay interest on the deposit from its date, and the depositor gave no authority to the company to mingle the money so deposited with its other funds or to use the money for any purpose other than that stated in the certificate, it was *held,* that

(1) The presumption, raised by the agreement to pay interest on the deposit, that the deposit created a debtor-creditor relationship, rather than one of trust, between the company and the depositor, was not conclusive and might be controlled by other evidence;

(2) The question, what was the relationship between the parties, was one of fact to be determined in view of all the circumstances;

(3) A finding was warranted that a trust relationship had been created between the parties.

Evidence of the facts above stated, together with evidence that the money so deposited with the company was used for its general purposes, warranted a finding of guilty at the trial of an indictment for larceny against one who was the executive officer in charge of the office of the company where the deposit was made.

At the trial of an indictment for larceny, there was evidence that the defendant was in charge of the eastern office of an investment company; that a certain bond was received there from a customer for the specific purpose of collection; that the defendant forwarded the bond to the western office of the company for collection and requested prompt forwarding of the money, planning to use it for the general purposes of the company; that shortly thereafter the western office notified the defendant that it was sending a sum equal to the amount of the bond; that such sum, not earmarked for any particular purpose, was received by the defendant's office in his absence; that he was informed of the receipt of such sum upon his return; and that he thereafter mingled such money with the general funds of the company and represented to the depositor that the proceeds of his bond had not been received by the defendant's office. *Held*, that

(1) An inference was warranted that the defendant knew that the money sent from the western to the eastern office of the company was in payment of the depositor's bond;

(2) Findings were warranted that the defendant did not intend to use such money to pay the depositor, and after its receipt fraudulently misrepresented to him that it had not been received;

(3) A finding of guilty was warranted.

Two INDICTMENTS, found and returned on July 14, 1932.

The defendant having waived trial by jury, the indictments were heard together in the Superior Court by *W. A. Burns*, J. The indictments, bills of particulars filed by the Commonwealth, material evidence and rulings requested by the defendant and refused are described in the opinion. The defendant was found guilty on each indictment and alleged exceptions.

*D. P. Ranney*, for the defendant.

*C. Fairhurst*, Special District Attorney, for the Commonwealth.

CROSBY, J. In the first case the defendant was indicted

on twenty-three counts charging him with larceny of various sums of money from certain persons. In answer to the defendant's motion for a bill of particulars the Commonwealth filed the following: "That as to Counts 1 to 23 inclusive of Indictment No. 806 — cash, drafts, checks, savings bank deposits, bonds or stock were delivered to the Interstate Mortgage Trust Company, of which the defendant was an executive officer and in charge of the eastern office of said company, that the same was in each case deposited with the company on the express trust and understanding that the said company would invest the same in first mortgages on improved farm or city property located in Oklahoma or Kansas, and for such investment only; that notwithstanding such trust and understanding but in violation thereof said moneys were without right and authority wrongfully diverted by the said company and this defendant to other purposes, and thus were wrongfully converted." Trial by jury was waived by the defendant and the case was heard by a judge of the Superior Court who found the defendant güilty on all counts except 1 and 3, which were nolprossed.

Mrs. Gladys S. Milkey, called by the Commonwealth, testified that she was the bookkeeper for the Interstate Mortgage Trust Company for fourteen years prior to its bankruptcy in 1931. During all this time the defendant was in charge of the eastern office and was president and cashier of that office. She and Anna O'Hara, another employee, had authority to sign the defendant's name, at his direction, to certificates of deposit, and no other person signed such certificates, these certificates being in the usual form, as follows: "The INTER STATE MORT-GAGE TRUST CO. No. 11591 Greenfield, Mass., September 9, 1930. This is to certify that Mr. Monroe S. Harris $1500 has deposited with this Company Fifteen Hundred Dollars to be invested in a First Mortgage on improved Farm or City property located in Oklahoma or Kansas at 7 per cent per annum from date. W. N. Snow Cashier By G. S. Milkey. [Printing on left hand side of certificate as follows:] Certificate of Deposit for invest-

ment only." Kenneth N. Davis and A. G. Kaulback were salesmen or representatives of the company. They brought money and bank books into the office for which certificates of deposit were issued and no question was ever raised as to their authority to do so. All moneys which came into the office were deposited in the bank accounts of the company, and such moneys were used and paid out for general or any purposes of the company. This witness further testified that she always informed those to whom certificates of deposit were issued that they would receive interest from the time designated on the certificate of deposit. These certificates were issued on no other condition than the usual condition that interest from the date set forth in the certificates should be paid on them. She did not know what the defendant or anybody else said to any of the people when they left their money with the company.

All the persons referred to in the indictment, except those who were unable to be present, testified in substance that they deposited money with the company and received certificates therefor; that no authority was ever given to the company or its officers to mingle their money with other company funds, or to use the same for general purposes of the company; that they relied upon the agreement contained in the certificates of deposit that first mortgages were to be given and that the moneys were to be held for investment only. Some of these persons received interest on their deposits and some did not. None of them ever received a mortgage. There was evidence that on April 2, 1931, the date of the bankruptcy of the company, there were no funds with which to pay the certificates of deposit on which indictments were returned.

At the close of the evidence the defendant presented the following requests for rulings: "1. Upon all the evidence the defendant should be found not guilty. 2. Depositing of money or its equivalent with the company and the issuance and acceptance of the company's certificate of deposit, together with the agreement to pay interest on such certificate, created a debtor and creditor relation. 3. The depositing of money or its equivalent with the company

and the issuance and acceptance of the company's certificate of deposit, together with the agreement to pay interest on such certificate, did not create an express or implied trust, and bailment or a special agency upon the part of the company or its officers." These requests were denied and the defendant excepted.

In announcing his decision the trial judge made the following statement: "Certain evidence was received *de bene* during the course of the trial. All that evidence is admitted and I find it a fact that Kaulback and Davis were employed by the Inter State Company as salesmen acting under the defendant's direction. On indictment 806 I find that on every count, except those I shall mention shortly, money was turned over by the several investors to be used as stated on the so called certificates of deposit with no authority, express or implied, to mingle or to use for any other purpose than that stated in the certificates. I find that the money was used for the general purposes of the company, for salaries, for office expenses, automobile expenses, and paying interest, and I rule that the relation of debtor and creditor did not exist. I find the defendant guilty on all counts in this indictment except counts 1 and 3 on which it was admitted by the district attorney *pro tem.* there was not sufficient evidence to warrant a finding of guilty. In short, they were in fact nolprossed. All the defendant's requests for rulings on this indictment are denied, and the allegations in the bill of particulars are proved beyond a reasonable doubt."

We are of opinion that the exception to the denial of the requests must be overruled. The only question is whether a trust relationship or that of debtor and creditor was proved between the company and the depositors. If the former it is plain that the defendant is guilty as charged. *Commonwealth* v. *King*, 202 Mass. 379, 391. It is the contention of the defendant that the fact that interest was to be paid on the certificates of deposit necessarily shows that the company had a right to use the money and securities deposited to earn the interest that it had agreed to pay. In support of this contention *Pittsburgh National Bank of*

*Commerce* v. *McMurray*, 98 Penn. St. 538, *In re Broad*, 13 Q. B. D. 740, *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. 259, 264, and other cases are cited by the defendant. In *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. it is said at page 264: "The obligation to pay interest upon deposited money imports naturally that the money may be used to earn money from which the interest may be paid, which increment from the use of the money would come to the depositor directly had the deposit not been made. Such an arrangement presumptively creates a debt as distinguished from a trust obligation." The opinion further states that the result in that case is the same if it be assumed that a trust was created notwithstanding the obligation of the trustee to pay interest upon the *res* without the right to use it as his own. That case clearly indicates that while a provision for interest on a deposit raises a presumption that a debtor and creditor rather than a trust relationship arises, it is by no means conclusive, but may be controlled by other evidence. In the case at bar the certificates of deposit bear the words "for investment only." These words are plain and free from ambiguity. They unequivocally import that the money and securities represented by the certificates were dedicated to and were to be used for but one purpose. No inference is required to be drawn to ascertain their meaning. No presumption arises, as the condition upon which the deposits are made is definitely stated. In view of their plain and unequivocal meaning the presumption raised by the promise of payment of interest cannot be held to prevail. The question was one of fact to be determined by the trial judge. *Commonwealth* v. *Moore*, 166 Mass. 513, 516. It was said by Sheldon, J., speaking for the court in *Commonwealth* v. *King*, 202 Mass. 379, at pages 391, 392: "The jury were clearly and distinctly told that it was for them to decide as a question of fact what was the true relation that was established by the dealings between . . . [the defendant] and his customers, whether it was to make him their debtor for money or property or the proceeds of property, or to constitute him

their agent or broker under a trust and confidence to use their money as a specific fund, so that it could be followed and identified and used and disposed of only in the manner directed by the customer . . . . There was evidence to justify a finding by the jury such as they were. allowed to make under the rulings just stated. The terms both of the temporary and of the permanent receipts given by the defendant indicate that what he received under them was received for the special purpose therein stated, and under the trust and confidence that it should be applied accordingly. The testimony of the customers who were called and of other witnesses tended in the same direction. The mere fact that the defendant was a broker, though entitled to consideration, was not of itself decisive as to the character of each or any of the transactions which were in evidence." The fact that the defendant was a broker in that case corresponds to the fact that interest was to be paid on the deposits in the case at bar. Both are entitled to consideration but neither is decisive. It was the duty of the trial judge sitting without a jury to determine what was the relation of the defendant to the various depositors. His finding has adequate support in the language of the certificates and in the testimony of the depositors. As the defendant's requests for rulings could not properly have been given for the reasons stated the entry must be

*Exceptions overruled.*


In the second case the indictment contains three counts charging that the defendant on May 3, 1930, did steal from Rollie L. Roberts, Belle W. Hall and Lilly E. and Winseck Saban the sum of $1,000. The defendant filed a motion for a bill of particulars and in answer thereto the Commonwealth filed the following: "That as to counts 1 to 3 inclusive of indictment No. 807 with the knowledge, acquiescence and participation of the defendant, an executive officer in charge of the eastern office of the Interstate Mortgage Trust Company, certain notes and mortgage papers were received by the Interstate Mortgage Trust Company

from the owners thereof under a special trust and agency and for a special purpose to collect them and to pay over the proceeds thereof to such owners; that the company and the defendant collected the same and instead of paying the money over to such owners deposited the same to the credit of the company with the intent thereby to appropriate the same to the company's use and wrongfully converted the same. That the defendant in procuring such notes and mortgage papers from the owners thereof concealed from them the fact that he was to turn over the proceeds thereof to the company to be used for its own purposes, and later misrepresented to them the facts regarding such collection and wrongful diversion." A trial by jury being waived by the defendant the case was heard by a judge of the Superior Court who found the defendant guilty on all counts of the indictment.

The evidence showed that the defendant was president and cashier of the Interstate Mortgage Trust Company, and for several years had been in charge of the eastern office of the company in Greenfield. The company sold mortgages on real estate located in western States. One of these mortgages known as the Kate L. Mounts loan in the total sum of $6,000 was divided into six bonds of which bond A for $1,000 was held by Rollie L. Roberts, bond C for $1,000 was held by Belle W. Hall, and bond E for $1,000 was held by Lilly E. and Winseck Saban. April 21, 1930, the defendant wrote to Roberts as follows: "You hold bond 'A' in the Kate L. Mounts loan No. 15316 of $1,000, due May 1st. This loan is going to be paid, but it will be necessary for us to have the papers to forward to our Western Office before payment can be made. Will you kindly hurry us in the papers. . . ." Roberts did not send his papers, but shortly afterwards Kaulback, an agent of the company, called upon him and took delivery of his papers. Kaulback also received from Mrs. Saban and Mrs. Hall their papers. Each of these three persons told Kaulback that they wanted their money on these papers. All three testified that they did not give any authority to reinvest the money. A receipt was given

Mrs. Saban as follows: "Rec'd all papers in this loan for collection. The Interstate Mtg. Trust Co. By G. H. Kaulback." April 25, 1930, all papers relating to this loan were sent to the western office of the company. April 26, 1930, the defendant wrote the western office explaining that the eastern office was low in funds and needed money to meet coupons for the month of May. The letter concludes, "The Mounts loan of $6000, which we sent you yesterday, when you have the funds come in, which Demming is going to pay, if you have same forwarded to us we ought to get the money by the 1st of the month, and it would be a great help to us. Kindly bear this in mind." There was evidence that on April 30 or May 1, 1930, the defendant left for the western office and was gone over a week. On April 30, 1930, the western office telegraphed the defendant "Draft for six thousand mailed today." May 3, 1930, during the absence of the defendant, the eastern office received two drafts from the western office, one for $6,000, and the other for $2,500. They were deposited in the company's bank on the same day. The bookkeeper of the company did not know of her own knowledge whether the $6,000 was to pay the Mounts loan. The defendant was informed of the receipt of the $6,000 on his return. There was evidence that after May 1, 1930, Roberts called at the office of the company several times for his money; and Mrs. Saban and Mrs. Hall wrote about their money. On June 3, 1930, the defendant wrote Mrs. Saban, "we have not received the remittance for the Mounts' loan from our Western Office, but when we do, we will forward you check immediately." On June 6, 1930, the defendant wrote the western office in part as follows: "Some time ago we took up the Mounts loan of $6000. Three of these bonds, amounting to $3000, we shall have to pay, and we are short of funds and cannot do so." Mrs. Saban testified that on August 20, 1930, the defendant and Kaulback called at the Sabans' house; that the defendant said the Mounts loan had not been paid but he offered to give her $500 on account, which she received the next day. March 4, 1931, the defendant wrote Roberts

that he had not received the money from the Mounts loan. On March 6, 1931, Roberts wrote direct to the western office respecting his claim and received a reply stating that the money had been sent to the eastern office on April 30, 1930. In March, 1931, the defendant met Roberts and his attorney and admitted that he had received the $6,000, but alleged that it had no tag or mark and that he had used it for other purposes. Before that time the defendant had said that he never had received the money. On April 24, 1931, he wrote Mrs. Hall's attorney that the money had not been received from the western office. No money was received by these persons on their bonds, except the $500 received by Mrs. Saban. On April 2, 1931, the company went into bankruptcy with but small cash assets.

The defendant requested the following rulings which were denied subject to his exception: "1. Upon all the evidence the defendant should be found not guilty. 2. The receipt of the money or its equivalent on the Mounts' loan so called by the eastern office without special designation or any marking, and the comingling of this money or its equivalent with the general funds of the company did not constitute a wrongful conversion of the same by the company. 3. The receipt of the money or its equivalent on the Mounts' loan so called by the eastern office without special designation or any marking, or the comingling of this money or its equivalent with the general funds of the company during the absence and without the knowledge of the defendant did not constitute a wrongful conversion of the same by the defendant." The trial judge announced his decision by the following statement: "On 807 I find that Roberts, Belle Hall and Mrs. Saban parted with their coupon notes, their papers, and that the defendant company [*sic*] received them for a specific purpose, to collect. That was the purpose for which they received them. That the money was collected by the company and that the defendant knew it was coming to the eastern office of the company, planned to use it for the company's purposes before it arrived as shown particularly by certain exhibits

in the case, and when it did arrive, it was diverted to the company purposes under his direction, and that he was conveniently away from Greenfield at that time. I find that after the money was received at the Greenfield office the defendant made false statements relative to the collection of it and that in writing he made representations to the effect that the money had not been received. This money was converted to the company's use by this defendant. On the facts found and the reasonable inferences drawn therefrom, I find the defendant guilty on all three counts. The defendant's requests for rulings are denied."

It is plain upon the reported evidence a finding that the defendant was guilty on all the counts was warranted. The mortgage papers were accepted for collection and no contention is made to the contrary. The three persons referred to in the indictment testified that they wanted the money due them. One of them, Mrs. Saban, took a written receipt stating that the papers had been received "for collection." The evidence shows that the $6,000 which came into possession of the eastern office from the western office on May 3, 1930, was in payment of the Mounts loan. Although the defendant was absent from his office in Greenfield when this money arrived he knew the loan was to be paid and the receipt of the $6,000 was brought to his attention on his return. It is a reasonable inference that he knew the draft for $6,000 was in payment of the Mounts loan in view of the identity of amounts and the fact that money for such payments was expected. Besides, the letter of the defendant to the western office dated April 26, 1930, shows that he contemplated using the money when received for purposes of the company. The evidence warranted findings that the defendant did not intend to use this money to pay the persons who were entitled to it, and thereafter for several months fraudulently represented to those persons that it had not been received.

The present case is governed by the decision in *Commonwealth* v. *Moore*, 166 Mass. 513. In that case the defendant was indicted for the embezzlement of money belonging to one Bennett, collected for him by the Globe Investment

Company of which the defendant was treasurer and general manager. The company had sold to Bennett a note and mortgage secured by real estate in Kansas, the company guaranteeing the principal and interest. As the company received word from Kansas that the note and mortgage were to be paid off, the defendant wrote to Bennett requesting his papers for collection stating that they wished "to present them to the maker in Kansas City at their due date, with demand for payment." Bennett sent his papers to the Boston office of the company and received a receipt signed by the president in the name of the company stating that they had received them "for collection." The papers were sent by the defendant, and a check for the amount due, payable to the company, was indorsed by the defendant and deposited in the company's account. The defendant concealed from Bennett the fact that the money had been collected, and later made various misrepresentations to him respecting the collection of the money. The company became insolvent. Upon these findings this court held that the defendant, by depositing the check in the company's account instead of paying the money over to the owner, could be convicted of embezzlement. See also *Commonwealth* v. *Hutchins*, 232 Mass. 285, 290.

As the defendant's requests for rulings were rightly denied, the entry must be

*Exceptions overruled.*