COMMONWEALTH *vs.* JAMES O. MILLS.

Suffolk. December 4, 2001. - March 22, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Larceny. Embezzlement. Practice, Criminal,* Required finding, Instructions to jury, Sentence.

A Superior Court judge did not err in denying a criminal defendant's motion for required findings of not guilty with respect to three counts of larceny, where the Commonwealth presented sufficient evidence to establish the essential elements of larceny by false pretenses beyond a reasonable doubt. [390-397]

Where the jury at a criminal trial were given instructions only as to traditional larceny, pursuant to which they found the defendant guilty, and where the act with which the defendant was charged did not constitute traditional larceny (only larceny by false pretenses), a new trial was required with respect to an indictment charging the defendant with three counts of larceny; consequently, the defendant could not be adjudicated a common and notorious thief pursuant to G. L. c. 266, § 40. [397-399]

At a sentencing hearing in a criminal case in which the judge's personal feelings interfered with his sentencing decision, the circumstances of the case required resentencing of the defendant by another judge. [399-402]

INDICTMENTS found and returned in the Superior Court Department on June 19, 1996.

The cases were tried before *Thomas E. Connolly*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Cathryn A. Neaves*, Assistant Attorney General, for the Commonwealth.

*Robert L. Sheketoff* for the defendant.

SPINA, J. Following a jury trial, the defendant was found guilty of three counts of larceny from the city of Boston, in

violation of G. L. c. 266, § 30[1]; two counts of larceny by false pretenses from the Committee for Public Counsel Services (CPCS), in violation of G. L. c. 266, § 30; three counts of perjury, in violation of G. L. c. 268, § 1A; three counts of pension fraud, in violation of G. L. c. 32, § 18; two counts of procurement fraud, in violation of G. L. c. 266, § 67A; two counts of making false claims, in violation of G. L. c. 266, § 67B; and four counts of failure to make tax returns, in violation of G. L. c. 62C, § 73 (*c*). Based on the five larceny convictions, the judge adjudicated the defendant a "common and notorious thief" pursuant to G. L. c. 266, § 40,[2] and sentenced him to serve not less than eighteen and not more than twenty years in prison with various lesser concurrent sentences on the remaining charges. The defendant filed a timely notice of appeal. The Appeals Court (1) reversed the judgment as to the indictment alleging three counts of larceny from the retirement board of the city of Boston (board), set aside those verdicts, and entered judgment for the defendant on those counts; (2) reversed the adjudication of the defendant as a common and notorious thief and vacated the sentence under G. L. c. 266, § 40; and (3) remanded the case to the Superior Court for resentencing by a different judge on the remaining indictments. *Commonwealth* v. *Mills*, 51 Mass. App. Ct. 366 (2001). We granted the Commonwealth's application for further appellate review. The issues now before us are whether the judge (1) erred in denying the defendant's motion for a required finding of not guilty with

[1]The indictments stated that, on or about April 15, 1993, April 4, 1994, and February 28, 1995, the defendant "did steal the property of the City of Boston, to wit: money or a release of a claim to money, the value of which exceeded $250." These dates corresponded with the dates that the defendant's annual earnings reports for the calendar years 1992, 1993, and 1994, respectively, were filed with the retirement board of the city of Boston (board). We note that the date on the third count should have read April 28, 1995, not February 28, 1995.

[2]General Laws c. 266, § 40, provides: "Whoever, having been convicted, upon indictment, of larceny or of being accessory to larceny before the fact, afterward commits a larceny or is accessory thereto before the fact, and is convicted thereof upon indictment, and whoever is convicted at the same sitting of the court, as principal or accessory before the fact, of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years."

respect to the three counts of larceny from the board; (2) erred by adjudicating the defendant a common and notorious thief; and (3) considered improper factors, including the defendant's exercise of his right to remain silent, when sentencing the defendant. We reverse the judgments as to the three counts of larceny from the board (no. 96-11037-002), and remand those matters for a new trial; we vacate the adjudication of the defendant as a common and notorious thief, which was dependent on the three counts of larceny from the board; and we remand the remaining convictions to the Superior Court for resentencing by a different judge.

1. *Background.* The defendant retired in 1978 from the Boston police department after he was diagnosed with hypertensive heart disease. He applied for and received from the board a nontaxable accidental disability pension of approximately $15,500 per year. The defendant then began to run a private investigation business, Mills Investigations, Inc. (Mills Investigations), out of his home in New Hampshire.

During 1993, 1994, and 1995, the defendant spent every business day at the Middlesex Superior Court, either in the court room assigned to clerk-magistrate Joseph Marshall or in Marshall's office. Beginning in April, 1994, Marshall handled most of the appointments of counsel for indigent defendants and motions for investigation funds. When the designated bar advocate was not in the courtroom, Marshall would deviate from the master list and appoint one attorney from among a group of four who were typically in the courtroom. Those four attorneys moved for investigation funds in every one of their cases and always retained the services of Mills Investigations. Marshall "rubber-stamped" his allowance of these motions off the record and in his back office where the defendant usually spent three hours a day socializing with Marshall.

For fiscal year 1993, the defendant billed CPCS for approximately $107,000 for investigative services. For fiscal year 1994, the defendant billed CPCS for approximately $197,000, representing 5,483 hours of investigative services. On forty-four occasions, the defendant submitted bills with more than twenty-four hours of work attributed to a single day. For fiscal year 1995, the defendant billed CPCS for approximately $359,000,

representing 10,057 hours of investigative services. The defendant submitted 211 bills in which he claimed to have worked well over twenty-four hours in a single day (with some days as long as seventy-two hours).

Between 1992 and 1994, the defendant received approximately $45,000 in nontaxable accidental disability benefits from the board. Once approved for a disability pension, the only limitation to keeping the full amount received each year is the amount of income the recipient earns, if any, during that same time period. Following receipt of pension benefits, every disability pensioner is required by statute to file with the board a yearly earnings report, signed under the pains and penalties of perjury. See G. L. c. 32, § 91A. The board calculates an earned income limitation for each disability pensioner, and the pensioner must refund a dollar's worth of pension for each dollar of income over the established limit. To collect money owed as a refund, the board sends bills to pensioners requesting remittance of a check in the appropriate amount. If the pensioner does not respond, the board withholds the amount due from the current pension distribution as security until payment is properly received.

The board estimated that the defendant could earn up to $30,228 in 1992, $30,820 in 1993, and $32,484 in 1994 before being liable for any refunds. For 1992, the defendant withdrew $89,637 from the corporate account of Mills Investigations for his own personal use; he reported to the board that he had earned a total of $25,000. For 1993, the defendant withdrew $65,640 from the corporate account of Mills Investigations for his own personal use; he reported to the board that he had earned a total of $17,500. For 1994, the defendant withdrew $104,494 from the corporate account of Mills Investigations for his own personal use; he reported to the board that he had earned a total of $30,000. As a result of the defendant underreporting his earnings, the board never sought a refund of any pension money.

2. *Motion for required finding of not guilty.* At the close of the Commonwealth's case, the defendant presented a general motion for required findings of not guilty. The motion was denied. The defense rested without presenting any evidence, the defendant renewed his motion, and it was again denied.

The defendant now asserts that the Superior Court judge erred in denying his motion for a required finding of not guilty with respect to the larceny indictment charging him with three counts of stealing the property of the city of Boston when he submitted false earnings reports to the board. He contends that while making such fraudulent statements would violate criminal statutes for perjury, see G. L. c. 268, § 1A, and pension fraud, see G. L. c. 32, § 18, such conduct did not constitute larceny. The defendant argues that he obtained his accidental disability pension payments lawfully. What he did was make it unlikely that the board would demand a refund and hold his future pension payments as security therefor. See G. L. c. 32, § 91A. The defendant also asserts that because the judge erred in denying his motion for required findings of not guilty, his adjudication as a common and notorious thief should be vacated because only two larceny convictions (from CPCS) would remain. See note 2, *supra.*

In his general motion for a required finding of not guilty, the defendant stated that the evidence produced by the Commonwealth was insufficient to prove beyond a reasonable doubt that he had committed the offenses as charged in the indictments. Pursuant to Mass. R. Crim. P. 25, as amended, 420 Mass. 1502 (1995), "[t]he judge on motion of a defendant . . . shall enter a finding of not guilty of the offense charged in an indictment . . . after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge." See *Commonwealth* v. *Andrews,* 427 Mass. 434, 440 (1998). The pertinent indictment herein, for three counts of larceny under G. L. c. 266, § 30,[3] charged the defendant with *stealing* the property of the city of Boston, namely "money or a release of a claim to money, the value of which exceeded $250." "[T]he word 'steal' has become 'a term of art and includes the criminal taking or conversion' by way either of larceny, embezzlement or obtaining by false pretenses." *Commonwealth* v. *King,* 202 Mass.

[3] General Laws c. 266, § 30 (1), states, in pertinent part, as follows: "Whoever steals, or with intent to defraud obtains by a false pretence, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . ."

379, 385 (1909), quoting *Commonwealth* v. *Kelley*, 184 Mass. 320, 324 (1903). These three formerly separate crimes have been merged into the one crime of larceny as defined in G. L. c. 266, § 30. See *Commonwealth* v. *King*, *supra* at 388. Larceny can be established by evidence that would have warranted a conviction upon any one of the three formerly separate charges. *Id.* See *Commonwealth* v. *Nadal-Ginard*, 42 Mass. App. Ct. 1, 5 n.6 (1997) ("Despite the merger of all types of larcenies in a single statute, G. L. c. 266, § 30, the distinctions among the former separate crimes of larceny, obtaining property by false pretenses and embezzlement may not have been wholly obliterated, but at the very least the evidence adduced must be sufficient to prove the elements of one or the other of the former separate crimes"); *Commonwealth* v. *Kelly*, 24 Mass. App. Ct. 181, 183 (1987) (one who commits any of three offenses of stealing, embezzlement, or obtaining property by false pretenses shall be guilty of "larceny"). The purpose of the merger of these three common-law crimes of "stealing" into one statutory crime was to eliminate the possibility that a defendant indicted for one of the crimes would escape punishment if the proof at trial established another of the crimes. See *Commonwealth* v. *King*, *supra* at 388; *Commonwealth* v. *Kelly*, *supra* at 184.

General Laws c. 277, § 41, provides: "In an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretenses." Thus, "[t]he statute explicitly permits convictions to be supported by evidence that the defendant's theft was committed in any manner condemned by the law." *Commonwealth* v. *Nadal-Ginard*, *supra* at 6. See *Commonwealth* v. *Corcoran*, 348 Mass. 437, 440-441 (1965); *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 172, 176 (1980), *S.C.*, 383 Mass. 269, cert. denied, 454 U.S. 849 (1981).

The Commonwealth was not ordered to elect its theory of the manner in which the alleged larcenies were committed. See *Commonwealth* v. *Monahan*, 349 Mass. 139, 171 (1965). Cf. *Commonwealth* v. *Liberty*, 27 Mass. App. Ct. 1, 9 (1989)

("Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways . . . . Then the defendant should be convicted if it is proved that he committed the crime in any of those ways"). To require the Commonwealth to elect a particular theory of larceny would be to continue to afford an opportunity to frustrate the ends of justice in derogation of the specific legislative intent to eliminate the merely technical differences between three cognate and similar offenses. See *Commonwealth* v. *King, supra* at 388-389. Here, there was no restriction in the indictment as to what legal theory of the statutory crime of larceny would be established by the evidence. As such, the proof offered by the Commonwealth with respect to the three counts of "stealing" from the board could be used to support any of the theories of larceny. See *Commonwealth* v. *Corcoran, supra* at 442 (while evidence offered was relevant to proof of embezzlement, it was also adequate to support charge of obtaining title by false pretenses); *Commonwealth* v. *Kenneally, supra* at 176 (even where Commonwealth proceeded on theory that defendant committed larceny by false pretenses, Commonwealth could prove its case by showing embezzlement or false pretenses).

Our well-established standard of review of the denial of a motion for a required finding of not guilty is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). Where, as here, a defendant submits a generally expressed motion for a required finding of not guilty, the motion applies to any offense properly charged in the indictment and is correctly denied when the evidence supports any such properly charged offense. See *Commonwealth* v. *Kalinowski,* 360 Mass. 682, 686 (1971); *Commonwealth* v. *Domanski,* 332 Mass. 66, 76 (1954). Therefore, we examine whether the Commonwealth presented sufficient evidence to establish the essential elements of at least one form of "stealing," namely larceny, embezzlement, or larceny by false pretenses, beyond a reasonable doubt. If so, then the Superior Court judge did not

err in denying the defendant's motion for a required finding of not guilty.

"To support a conviction of larceny under G. L. c. 266, § 30, the Commonwealth is required to prove the 'unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently' " (footnote omitted). *Commonwealth* v. *Donovan*, 395 Mass. 20, 25-26 (1985), quoting *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). See G. L. c. 277, § 39. We agree with the well-reasoned analysis of the Appeals Court that filing false earnings reports with the board does not constitute a trespassory taking of money, and the "release of a claim to money" is not property within the meaning of G. L. c. 266, § 30 (2), or the common law. See *Commonwealth* v. *Mills*, *supra* at 371-372.

With respect to embezzlement, the evidence should establish that the defendant "fraudulently converted" to his personal use property that was under his control by virtue of a position of "trust or confidence" and did so with the intent to deprive the owner of the property permanently. See *Commonwealth* v. *Nadal-Ginard*, *supra* at 7-8. See also *Commonwealth* v. *Hays*, 14 Gray 62, 64 (1859) ("The statutes relating to embezzlement . . . do not apply to cases where the element of a breach of trust or confidence in the fraudulent conversion of money or chattels is not shown to exist"). Contrary to the Commonwealth's argument that the Appeals Court added a new element to the crime of embezzlement, the existence of a confidential or fiduciary relationship between the embezzler and the victim has always been at the heart of this crime.[4] See *Mickelson* v. *Barnet*, 390 Mass. 786, 790 (1984) (conversion was embezzlement where nature of relationship was that of agent and principal); *Commonwealth* v. *King*, *supra* at 391-392

---

[4]Pursuant to Instruction 5.415 of the Model Jury Instructions for Use in the District Court (1997), in order to establish embezzlement, the Commonwealth must prove: (1) "That the defendant, *while in a position of trust or confidence,* was entrusted with possession of personal property belonging to another person"; (2) "That the defendant took that property, or hid it, or converted it to his (her) own use, without the consent of the owner"; and (3) "That the defendant did so with the intent to deprive the owner of the property permanently" (emphasis added).

(relationship necessary to crime of embezzlement one of trust and confidence); *Commonwealth* v. *Ryan*, 155 Mass. 523, 526-527, 530 (1892) (fraudulent conversion of property by one entrusted with its possession constitutes embezzlement). Compare *Commonwealth* v. *Barry*, 124 Mass. 325, 327 (1878) ("If a person honestly receives the possession of the goods, chattels or money of another upon any trust, express or implied, and, after receiving them, fraudulently converts them to his own use, he may be guilty of the crime of embezzlement"); *Commonwealth* v. *Kenneally*, *supra* at 177 (defendant who legally obtains money from client and later forms intent to keep it may be guilty of embezzlement). The fraudulent conversion of property by parties who merely have a debtor-creditor relationship does not constitute embezzlement. See *Mickelson* v. *Barnet*, *supra* at 790; *Commonwealth* v. *King*, *supra* at 391-392; *Commonwealth* v. *Snow*, 284 Mass. 426, 430-432 (1933).

The defendant's filing of false earnings reports with the board, conduct intended to eliminate the possibility that the board would demand a refund of a portion of his annual accidental disability pension because of his earned income, does not establish the essential elements of embezzlement. Pursuant to G. L. c. 32, § 13 (1) (*b*), "[p]ayments under any annuity, pension or retirement allowance . . . shall be due and payable for the month on the last day of each month during the continuance of such annuity, pension or retirement allowance, as the case may be." General Laws c. 32, § 91A, provides that "[e]very person pensioned or retired under any general or special law for disability, including accidental disability, shall in each year on or before April fifteenth subscribe, under the penalties of perjury, and file with the [public employee retirement administration] commission a statement . . . certifying the full amount of his earnings from earned income during the preceding year." If such earnings exceed a predetermined amount, said person "shall refund the portion of his retirement allowance for such preceding year equal to such excess and until such refund is made, his pension or retirement allowance shall be held as security therefor." *Id.* This procedure establishes a debtor-creditor relationship between the recipient of a disability retirement allowance and the board. The recipient is lawfully entitled

to a specified amount on a monthly basis. If, after submitting an earned income statement, it is determined that the recipient should have received a smaller disability retirement allowance because of other earned income, the recipient then must refund a portion of it to the board and future distributions will be withheld until that debt has been satisfied.

At the time the defendant filed his annual earnings reports with the board on or about April 15, 1993, April 4, 1994, and April 28, 1995, he was not "fraudulently converting" money that was under his control by virtue of a position of "trust or confidence." The money he received was merely the distribution of a government benefit to which he was lawfully entitled each month for his own personal use and to which, at the time of receipt, he obtained complete title and possession. By filing false earnings reports, the defendant was ensuring that he would not have to pay a reimbursement to the board and would not be subjected to any subsequent withholdings. While such conduct certainly constitutes perjury, see G. L. c. 268, § 1A, and pension fraud, see G. L. c. 32, § 18, it is not embezzlement.

The Commonwealth contends that the nature of the relationship between an alleged embezzler and a victim is one of fact that falls within the province of the jury to decide. See *Commonwealth* v. *Snow, supra* at 430-432 (duty of fact finder to determine whether trust relationship or debtor-creditor relationship existed between mortgage trust company officer and depositors). This would ordinarily be true where, to establish the essential elements of embezzlement, the Commonwealth must show that the defendant acquired control of property through a position of "trust or confidence." See *Commonwealth* v. *King, supra* at 391-392 (question of fact for jury was whether dealings between investment broker and customers made him their debtor for money or property, or made him their agent under a trust and confidence to use their money only as specifically directed). In this case, the relationship between the defendant and the board is established, as a matter of law, pursuant to G. L. c. 32, § 91A, to be that of debtor and creditor.

The final "stealing" offense that falls under the larceny statute, G. L. c. 266, § 30, is larceny by false pretenses. A prosecution for larceny by false pretenses requires proof that (1)

a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property. See *Commonwealth* v. *Leonard,* 352 Mass. 636, 644-645 (1967); *Commonwealth* v. *Monahan,* 349 Mass. 139, 150-151 (1965). See also G. L. c. 277, § 39.

Following his diagnosis of hypertensive heart disease, the defendant applied for, and the board made a determination that he was entitled to, an accidental disability retirement allowance. The Commonwealth has not contested the defendant's lawful entitlement to this benefit. However, when the defendant filed annual earnings reports with the board in 1993, 1994, and 1995, he stated that he had earned far less income than he had actually withdrawn from the corporate account of Mills Investigations for his own personal use. The evidence warrants a finding that the defendant knowingly made such false statements with the intent that the board would rely on them, would determine that he had not exceeded his annual earned income limitations, and, consequently, would continue to pay him the full amount of his accidental disability retirement allowance every year. This is exactly what happened; the defendant's expectations were fulfilled. The defendant's actions resulted in his receiving a greater allowance from the board than that to which he was lawfully entitled and constituted larceny by false pretenses.

We conclude that the judge did not err in denying the defendant's motion for required findings of not guilty with respect to the three counts of larceny from the board. After viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could have found the essential elements of larceny by false pretenses beyond a reasonable doubt.

3. *Jury instructions.* The defendant's convictions of "stealing" from the board were based on a theory of traditional larceny because that was the only instruction given to the jury.[5] The jury were not instructed on larceny by false pretenses with

---

[5]The judge charged the jury on the elements of larceny as follows: "In order to prove the defendant guilty of larceny, the Commonwealth must prove

respect to this indictment.[6] The Commonwealth did not request further instructions on any other theory of larceny, and the defendant, understandably, did not object to the instructions as given.

"The primary purpose of instructions to a jury is to assist them in the discharge of their responsibility for finding the facts in issue and then in applying to the facts found the applicable rules of law to enable them to render a proper verdict. The instructions should be full, fair and clear as to the issues to be decided by the jury, the rules to be followed by the jury in deciding the facts, and the law they are to apply to the facts found." *Pfeiffer* v. *Salas*, 360 Mass. 93, 100 (1971). See *Commonwealth* v. *Key*, 381 Mass. 19, 27 (1980) (jury should be clearly presented with issues of fact raised by evidence and with careful explanation of applicable law). A criminal conviction cannot be affirmed on appeal where the jury were not instructed on the elements of the theory of the crime. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 117-119 (1994) (omission of essential element from instruction on underlying felony to felony-murder charge, not raised as error below, was of sufficient magnitude, together with omission in joint venture instruction, to warrant relief to avoid miscarriage of justice); *Commonwealth* v. *Watson*, 388 Mass. 536, 546 (1983), *S.C.*, 393 Mass. 297 (1984) (judge's failure to instruct jury, in absence of objection, that defendant could be found guilty of felony-murder based on armed robbery only if he knew that accomplice had gun resulted in substantial risk of miscarriage of justice within meaning of G. L. c. 278, § 33E, and necessitated new trial); *Commonwealth* v. *Colon*, 52 Mass. App. Ct. 725, 730-731 (2001) (judge's failure to instruct jury on essential element of crime of armed robbery based on joint venture theory, in absence

three things beyond a reasonable doubt. One, that the defendant took or carried away the property or money; second, that the property or money was owned or possessed by someone other than the defendant; and three, the defendant did so with the intent to deprive that person of the property permanently."

[6]The judge did give a larceny by false pretenses instruction to the jury, but it was only with respect to the indictment alleging that on divers dates between July 1, 1993, and June 30, 1994, and between July 1, 1994, and June 30, 1995, the defendant obtained by false pretenses the property of the Commonwealth (funds allocated to CPCS), the value of which exceeded $250.

of objection, resulted in substantial risk of miscarriage of justice). See also *Chiarella* v. *United States*, 445 U.S. 222, 236 (1980); *Rewis* v. *United States*, 401 U.S. 808, 814 (1971); *United States* v. *Angiulo*, 897 F.2d 1169, 1196-1197 (1st Cir.), cert. denied, 498 U.S. 845 (1990); *United States* v. *Hill*, 835 F.2d 759, 764 n.7 (10th Cir. 1987). Cf. *Cola* v. *Reardon*, 787 F.2d 681, 693 (1st Cir.), cert. denied, 479 U.S. 930 (1986).

Precise instructions to the jury on the Commonwealth's *theory* of how the defendant "stole" from the board were critical because traditional larceny, embezzlement, and larceny by false pretenses have different required elements. The jury herein did not have the benefit of the applicable law, namely the elements of larceny by false pretenses, so as to be able to render a proper verdict. Because the jury were only given instructions as to traditional larceny, pursuant to which they found the defendant guilty, and because we have already concluded that the filing of false earnings reports with the board does not constitute traditional larceny (only larceny by false pretenses), the defendant's larceny convictions cannot stand. A new trial is required with respect to the indictment charging the defendant with three counts of larceny from the board.[7] In light of this conclusion, the defendant may not be adjudicated a common and notorious thief pursuant to G. L. c. 266, § 40.

4. *Sentencing.* The defendant contends that his sentencing was seriously flawed because of the judge's consideration of improper factors.[8] The defendant acknowledges that a judge has considerable latitude to fashion an appropriate individualized sentence and may take into consideration, inter alia, a

---

[7]The Appeals Court has pointed out that double jeopardy principles would bar retrial on a theory of larceny by false pretenses. See *Commonwealth* v. *Mills*, 51 Mass. App. Ct. 366, 373 n.11 (2001). This issue is not presently before us and is a defense that properly can be raised by motion prior to the commencement of a new trial. See Mass. R. Crim. P. 13 (c) (2), 378 Mass. 873 (1979).

[8]Prior to sentencing the defendant, the judge made the following comments:

"[W]e have from the evidence in this case the getting of appointments over in Cambridge by a few favored attorneys being done in the back room unlike any other appointments that are made in open court.

"Can I tell you, folks, when you attack the basic system that every one of us are subject to, that includes governors and it includes judges appointed by governors, that we are all subject to the same rules, and there are no separate

defendant's character, behavior, background, and amenability to rehabilitation. See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92-93 (1993); *Commonwealth* v. *Coleman*, 390 Mass. 797, 805 (1984). However, a judge's discretion is not unlimited. He may not punish a defendant for an untried criminal offense, see *Commonwealth* v. *Souza*, 390 Mass. 813, 817 (1984), punish a defendant in order to send a personal philosophical message, see *Commonwealth* v. *Howard*, 42 Mass. App. Ct. 322, 327-328 & n.3 (1997), or rely on information that is inaccurate or misleading, see *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976). Furthermore, a judge may not punish a defendant for refusing to confess before sentencing.[9] See *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493, 497 (1976) (imposing greater

rules for anyone else; none. And that includes assistant clerks, magistrates, includes investigators paid for by the Commonwealth and includes our CPCS.

"There's the third aspect of public corruption, the involvement of that clerk magistrate, and what the effect of that is in the sentencing here on the public perception of when somebody is adjudicated guilty as to what the Court is going to do about it.

"And finally, I have this to say . . . there has been no admission here of any kind of wrong or shame or 'what I did wrong' or anything like that in this case. None. None.

"When I was a young kid growing up in the City of Boston and I went to confession as a young little kid down at Holy Name Parish, the priest would always have to have a firm purpose on the admission of your wrong. I say it is no different in this sphere right here and now. But there has been absolutely none of it in this case. None. And the public perception is an extremely important part. Public perception of the process, not only the integrity of the process, but that when somebody is adjudicated guilty for tampering with the integrity of that process, I say it is incumbent on the Court to stand up and say no. . . . [I]n this case I don't see any alternative for me other than to follow the Commonwealth's recommendation. There's been absolutely no sense of 'I'm sorry,' 'I did wrong,' anything like that. I think for all the reasons I just listed I am going to impose the recommendations as submitted by the Commonwealth."

Following the conclusion of the judge's remarks, defense counsel objected to the judge's reliance, for sentencing purposes, on the defendant's failure to admit his guilt. The judge stated that he would strike it as one of the reasons for imposing the Commonwealth's recommended sentence but concluded that the other reasons were sufficient.

[9]We note that a defendant's willingness to admit guilt is a proper factor for consideration in more lenient sentencing. See *Commonwealth* v. *Johnson*, 27 Mass. App. Ct. 746, 750-751 (1989). What is impermissible is the enhancement of a defendant's punishment for his exercise of a constitutional right. Cf. *Commonwealth* v. *Ravenell*, 415 Mass. 191, 193 (1993) (severity of

sentence because defendant refused to confess burdens defendant's appellate and other postconviction rights). See also *Mitchell* v. *United States*, 526 U.S. 314, 321 (1999) (privilege against compelled self-incrimination retained at sentencing hearing); *LeBlanc* v. *United States*, 391 F.2d 916, 917-918 (1st Cir. 1968). It is of paramount importance that justice be administered impartially, based solely on relevant criteria for sentencing. See *Commonwealth* v. *Coleman, supra* at 810-811 n.15.

We agree with the Appeals Court that a review of the record of the sentencing hearing strongly suggests that the judge's personal feelings interfered with his sentencing decision. See *Commonwealth* v. *Mills, supra* at 374-375 n.12. Contrary to the Commonwealth's argument, the judge went beyond impartially considering the nature of the offenses and the circumstances surrounding the defendant's commission of the crimes. Particularly troubling is the judge's discussion of his own personal religious experiences, his statement about the impact that his sentencing may have on public perceptions of corruption by Commonwealth employees, and his commentary on the fact that the defendant had not admitted to culpability (notwithstanding the judge's postsentence statement that he would strike as one of his reasons the defendant's failure to confess and apologize). A trial judge must be ever vigilant to make certain that his personal and private beliefs do not interfere with his judicial role and transform it from that of impartial arbiter. See *Commonwealth* v. *Haley*, 363 Mass. 513, 518 (1973), *S.C.*, 413 Mass. 770 (1992) ("an overspeaking judge is no well-tuned cymbal"); *Commonwealth* v. *White*, 48 Mass. App. Ct. 658, 663-664 (2000); *Commonwealth* v. *Lebron*, 23 Mass. App. Ct. 970, 972 (1987). Such conduct does a disservice to the entire judicial process. The circumstances of this case necessitate resentencing by a different judge. See *Commonwealth* v. *Mills, supra* at 374-375 & n.12. See also *Com-*

defendant's sentence cannot be increased in retaliation for decision to go to trial rather than plead guilty); *Commonwealth* v. *Souza*, 390 Mass. 813, 820 (1984) (unconstitutional for judge to enhance defendant's punishment for exercise of right to plead not guilty). Contrast *Damiano* v. *Gaughan*, 770 F.2d 1, 3 (1st Cir. 1985) (refusal to grant leniency permissible because of defendant's failure to cooperate with police regarding illegal activity of others, but enhancement of penalty for failure to cooperate prohibited).

*monwealth* v. *Coleman, supra* at 810-811 n.15; *Commonwealth* v. *Lebron, supra* at 972.

5. *Conclusion.* The judgments are reversed as to the indictment alleging three counts of larceny from the board (no. 96-11037-002), the verdicts set aside, and the cases remanded for a new trial. The adjudication of the defendant as a common and notorious thief is vacated. The remaining convictions are remanded to the Superior Court for resentencing by a different judge.

*So ordered.*