COMMONWEALTH *vs.* KEON K., a juvenile.

No. 06-P-1110.

Bristol. September 14, 2007. - October 25, 2007.

Present: LENK, GELINAS, & MEADE, JJ.

*Delinquent Child. Juvenile Court,* Delinquent child. *Practice, Criminal,* Juvenile delinquency proceeding, Sentence, Assistance of counsel.

At a proceeding charging a juvenile with delinquency by reason of assaulting a woman in a church, no substantial risk of a miscarriage of justice arose from the judge's inquiry, as part of the judge's sentencing decision, into a prior complaint against the juvenile for sexual assault, which had been nol prossed, where no Federal or State law prohibited such inquiry for sentencing purposes, and where the prior assault, which also took place in a church, was a relevant consideration in that it evidenced the juvenile's pattern of conduct [571-572]; likewise, the judge's comments about the juvenile's commitment to the Department of Youth Services (DYS) being in the best interest of "decent people" who wished to pray did not evince any personal religious bias [572], and the juvenile's one-year commitment to the DYS was otherwise appropriate [572-573].

No substantial risk of a miscarriage of justice arose from a judge's permitting the jury to remain in the court room while a juvenile was sentenced, where, even if such action constituted a violation of G. L. c. 119, § 65, it was not possible to discern how the outcome would have been different if the jury had been excluded. [573]

This court declined to entertain a juvenile's claim on appeal that his trial attorney provided him ineffective assistance at sentencing, where the claim did not appear either on the trial record or on the appellate record. [573-574]

This court declined a juvenile's request for a reversal of the juvenile's delinquency findings and expungement of his record. [574]

COMPLAINTS received and sworn to in the Bristol County Division of the Juvenile Court Department on August 22, 2005.

The cases were tried before *Mark E. Lawton,* J.

*Theodore L. Bosen* for the juvenile.

*Rachel J. Eisenhaure,* Assistant District Attorney, for the Commonwealth.

MEADE, J. In 2005, complaints issued against the juvenile,

charging him with delinquency by reason of indecent assault and battery on a person age fourteen or over in violation of G. L. c. 265, § 13H, and open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16. Following a jury trial in the Juvenile Court, the jury found the juvenile delinquent on both offenses. Thereafter, the judge committed him to the Department of Youth Services (DYS). On appeal, the juvenile claims that the judge sentenced him for conduct other than that for which he had been found delinquent, and improperly permitted the jury to remain in the court room for sentencing. He also claims that his trial counsel provided ineffective assistance at the sentencing proceeding. To the extent these sentencing claims are not moot,[1] we affirm.

1. *Background.* a. *The crimes.* During the evening of August 21, 2005, Mary Smith[2] knelt before a statue of Our Lady of Fatima to pray in a downstairs area of St. Anne's Church in Fall River. When she finished praying, she searched her purse for money in order to light a candle. As she did this, the juvenile "came from behind [her] and smacked [her] on [her] behind" and ran toward a nearby men's room. Frightened by the assault, Smith gathered her belongings in order to leave because she was all alone in the church basement.

In the course of leaving, Smith turned around and saw the juvenile a few feet away. Smith told him that she did not appreciate what he had done, to which the juvenile replied, "You

---

[1]The juvenile has completed his DYS commitment, and his appeal does not challenge the validity of the delinquency findings. Generally, "litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome." *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703 (1976). Because a juvenile who has reached the age of majority cannot be resentenced, it could be said that the juvenile no longer has an interest in the outcome of this appeal. The counter is that his commitment, if not vacated, could have a collateral consequence in future criminal proceedings. See *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 387 (1981); *Commonwealth* v. *Streeter*, 50 Mass. App. Ct. 128, 130-131 (2000). See also G. L. c. 119, § 21 (DYS commitment may be considered by a judge in imposing sentence in any criminal proceeding against the same person); Mass.R. Crim.P. 28(d)(1), 378 Mass. 898 (1979) (judge may consider prior juvenile dispositions for purposes of setting bail or sentencing). Although the materialization of such a consequence is a matter within the juvenile's control, the Commonwealth has not suggested that his appeal is moot and we shall address his claims.

[2]A pseudonym.

didn't like it?" When Smith said "No," the juvenile turned around and said, "I guess you're not gonna like this," whereupon he lifted his oversized shirt and exposed his erect penis. Smith walked away as fast as she could. On her way out, she saw a church maintenance worker and reported the incident. The maintenance worker called the police.

As she waited for the police to arrive, Smith saw the juvenile sitting in the sacrament room directly across from the altar. When the police arrived, they asked the juvenile to exit the sacrament room because others were present. Outside the room, the juvenile was pat frisked. The officer noticed the juvenile's pants' zipper was down and his underwear was exposed. He was then escorted outside the church and placed under arrest.

b. *The defense.* The juvenile testified in his own behalf. According to the juvenile, he had gone into the church to use the bathroom. Once inside, he mistakenly believed that Smith was someone he knew. He admitted that he "placed [his] hand on her behind" or "pat[ted]" her, and said "Hi." When Smith turned toward him he realized his error but was unable to apologize before she got upset. He then turned and walked away to the bathroom. When he came out of the bathroom, Smith told him that she did not appreciate what he had done to her. To avoid an argument, the juvenile kept walking into the sacrament room. He could not remember if his pants were zippered closed, but he denied that he exposed himself.

c. *Sentencing.* After the jury found the juvenile delinquent, the judge thanked them for their service and permitted the jury to remain in the court room for sentencing, which he noted was for him to determine. Upon the judge's request for recommendations, the prosecutor recommended that the juvenile be committed to DYS. In support of her recommendation, the prosecutor referenced a prior assault and battery and the facts underlying this case. The judge was also informed of a prior complaint against the juvenile for sexual assault of a seventy-one year old woman in a church, and that it had been nol prossed. The judge posed a rhetorical concern about how many people the juvenile would have to sexually assault "in a church before something's done."

The juvenile's counsel confirmed that the prior sexual assault had been nol prossed, and he recommended a suspended com-

mitment with counselling. The probation officer recommended a DYS commitment and noted a prior commitment when the juvenile violated his probation in an assault and battery case.

After hearing the recommendations, the judge committed the juvenile to DYS until his eighteenth birthday, which amounted to one year as his birthday fell on the week following trial. The judge explained his concern for the juvenile, the juvenile's need for treatment, and the life sentence the juvenile would receive if he should rape someone as an adult. He encouraged the juvenile to take part in any treatment program that DYS offered to help him deal with his "sexual issues." The judge stated:

> "This could be — this is really your last shot. [Defense counsel] will tell you that. So it's in your best interest in addition to the best interests of decent people who want to pray to the Blessed Virgin Mary without being sexually assaulted. It's to the advantage of everyone that you get some help. So I'm going to commit you. Good luck to you, son, and have a good day. Have a good day."

2. *Discussion.* a. *Sentencing.* The juvenile claims that by questioning counsel regarding the nol prossed case involving a prior church sexual assault, and referring to the best interest of people who would like to pray to the "Blessed Virgin Mary without being sexually assaulted," the judge was punishing him for conduct other that for which he was found delinquent. See *Commonwealth v. LeBlanc*, 370 Mass. 217, 221 (1976). Because the juvenile lodged no objection to either of these concerns at the time, we review them only to determine if there was a substantial risk of a miscarriage of justice. There was no such risk.

First, there was nothing improper in the judge's inquiry into, or reliance on, the nol prossed sexual assault as part of his sentencing decision. Nothing in the Federal or State Constitutions, the General Laws, or the rules of criminal procedure prohibits a judge from considering a defendant's entire record, including dismissals, for sentencing purposes. See *Commonwealth v. Lender*, 66 Mass. App. Ct. 303, 307-308 (2006); G. L. c. 276, § 85, as amended by St. 1956, c. 731, § 15. See also *Commonwealth v. Goodwin*, 414 Mass. 88, 91-93 (1993) (a

sentence should reflect the judge's careful assessment of several goals, including "punishment, deterrence, protection of the public, and rehabilitation," and the judge may consider many factors that would not be relevant at trial, including information about the defendant's "character, behavior, and background").[3] In fact, the prohibition found in the criminal rules speaks only to matters of which the defendant was found not guilty. See Mass.R.Crim.P. 28(d)(1), 378 Mass. 898 (1979). A nolle prosequi entered before jeopardy attaches does not operate as an acquittal. See Mass.R.Crim.P. 16(b), 378 Mass. 885 (1979). Also, the fact that the prior sexual assault was alleged to have taken place in a church was a relevant consideration for the judge given that it bespoke a pattern of conduct or modus operandi by the juvenile.

Second, the judge's reference to the juvenile's DYS commitment being in the best interest of "decent people" who wished to pray before the "Blessed Virgin Mary without being sexually assaulted" was specific to the facts of this case, and did not evince any personal religious bias. The comment referenced a concern for the victim in this case, as well as for the community, and was not a religious motive for the sentence. The juvenile's reliance on *Commonwealth* v. *Mills*, 436 Mass. 387 (2002), is misplaced. In *Mills*, among other improper remarks, the sentencing judge recited his personal religious experience as a youth relative to confessing sins, and compared it to the defendant's lack of contrition at his sentencing. *Id.* at 399-401 & n.8. Unlike the judge in *Mills*, the judge's sentencing remarks here did not go "beyond impartially considering the nature of the offenses and the circumstances surrounding the . . . [juvenile's] commission of the crimes." *Id.* at 401.

Finally, the juvenile's one-year commitment to DYS was commensurate with the findings of delinquency, the juvenile's character and behavior reflected by his commission of sexual offenses in church, the necessity of treatment and counselling to foster rehabilitation to prevent a similar adult offense that would bring a

---

[3]Due process requires that any sentencing information relied upon by the judge be reliable and not misleading, see *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976), but the juvenile makes no such argument along these lines. See *Commonwealth* v. *Junta*, 62 Mass. App. Ct. 120, 129 (2004).

severe sentence, and the need to protect the community from his deviant conduct. There was no error and thus no risk of a miscarriage of justice.

b. *Presence of the jury during sentencing.* The juvenile claims that the judge violated G. L. c. 119, § 65, which excludes the general public from juvenile proceedings, by permitting the jury to remain while he was sentenced. During the sentencing portion of the trial, the juvenile lodged no objection to the jury remaining in the court room, and we again review only to determine whether a substantial risk of a miscarriage of justice occurred. We conclude that in the circumstances presented here, no such risk existed.

Pursuant to G. L. c. 119, § 65, as amended by St. 1996, c. 2000, § 9, juvenile proceedings are not accessible to the general public, and admission is limited to "only such persons as may have a direct interest in the case . . . ." Section 65 does not expressly exclude the jury from sentencing proceedings, and the juvenile cites no authority that implies such a restriction. Furthermore, § 65 contains no remedial provision, let alone one that would affect the juvenile's commitment. It appears that the statutory exclusion of the public from juvenile proceedings is aimed at minimizing the stigmatization a juvenile faces as a result of court proceedings, see *Globe Newspaper Co. v. Superior Ct.*, 383 Mass. 838, 850-851 (1981), rev'd on other grounds, 457 U.S. 596 (1982), and does not have punishment as its focus. See *News Group Boston, Inc. v. Commonwealth*, 409 Mass. 627, 631 (1991); *Commonwealth v. Kelley*, 411 Mass. 212, 214 (1991). Even if we were to assume without deciding that the statute would preclude the jury from being present during sentencing, we are hard pressed to see here how the outcome would have been different if the jury had been excluded.

c. *Assistance of counsel.* The juvenile also claims that his trial attorney provided him ineffective assistance at sentencing where he failed to provide the court with any evidence that would have mitigated against a DYS committment. "[O]ur courts strongly disfavor raising claims of ineffective assistance on direct appeal." *Commonwealth v. Zinser*, 446 Mass. 807, 811 (2006). A claim of ineffective assistance of counsel should only be brought on direct appeal when the factual basis of the claim appears indisput-

ably on the trial record — that is, where the issues do not implicate any factual questions more appropriately resolved by a trial judge. See *Lannon* v. *Commonwealth*, 379 Mass. 786, 788 (1980); *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344-345 (1994).

Here, the claim does not appear on the trial record. In fact, it does not appear on the appellate record. The juvenile has failed to identify what mitigating evidence trial counsel should have argued to the judge to support a suspended sentence. In this posture, we decline to entertain the claim on appeal. See *Commonwealth* v. *Diaz*, 448 Mass. 286, 289 (2007); *Commonwealth* v. *Burts*, 68 Mass. App. Ct. 684, 685 (2007). See also *Commonwealth* v. *Leavey*, 60 Mass. App. Ct. 249, 254 (2004) (counsel not ineffective for not arguing mitigating circumstances where the claim was unaccompanied by any suggestion as to what the mitigating circumstances were).[4]

d. *Relief.* As a remedy, the juvenile seeks a reversal of the delinquency findings and expungement of his record. We decline this request for a few reasons. First, the juvenile poses his request in a single concluding sentence in his brief without citation to any authority. This does not suffice for appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Second, given the result we reach, the juvenile is not entitled to any relief. Finally, even if the juvenile were entitled to a remedy, it would be resentencing, see *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 275, cert. denied, 459 U.S. 864 (1982), not reversal and expungement. See *Commonwealth* v. *Gavin G.*, 437 Mass. 470, 472-483 (2002).

*Adjudications of delinquency affirmed.*

---

[4]The juvenile also claims that counsel was ineffective for not objecting to the judge's consideration of the nol prossed case, to the judge's religious comments, and to the judge's invitation to the jury to remain during sentencing. Given our resolution of these claims above, they cannot form the basis for an ineffective assistance of counsel claim. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994) (if counsel's omission does not present a substantial risk of a miscarriage of justice, no basis for an ineffective assistance of counsel claim under either the Federal or State Constitution); Linn, The Status of the *Freeman* and *Saferian* Standards, 86 Mass. L. Rev. 2, 4 (2001) ("the [*Commonwealth* v. *Freeman*, 352 Mass. 556 (1967),] standard renders the [*Commonwealth* v. *Saferian*, 366 Mass. 89 (1974),] standard redundant regarding unpreserved trial errors").