NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11566

COMMONWEALTH  vs.  DAVID ST. HILAIRE.


Middlesex.     September 4, 2014. - January 2, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Larceny.  Consent.  Mental Impairment.  Intent.  Evidence,
    Intent.



Indictments found and returned in the Superior Court
Department on January 18, 2011.

The case was heard by Mitchell H. Kaplan, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Steven J. Rappaport for the defendant.
Melissa Weisgold Johnsen, Assistant District Attorney
(David Solet, Assistant District Attorney, with her) for the
Commonwealth.


HINES, J.  Following a jury-waived trial, a Superior Court

judge found the defendant guilty of larceny from a person sixty

years of age or older in violation of G. L. c. 266, § 30 (5).[1] The charges arose from a real estate transaction in which Erika Magill, the victim, sold her property to the defendant. At the time of the transaction, the victim was an eighty-six year old widowed nursing home resident. The defendant's appeal claiming error in the judge's denial of his motion for a required finding of not guilty was entered in the Appeals Court, and we transferred the case to this court on our own motion to consider whether, as the judge ruled, the crime of larceny may be proved by evidence that (1) the victim lacked the mental capacity to understand the transaction she entered into with the defendant; and (2) the defendant knew or should have known that she lacked such capacity. We conclude that the "unlawful taking" element of the crime of larceny by theft may be proved by evidence that the victim lacked the mental capacity to consent to a taking of her property, but that the "specific intent to steal" element requires proof that the defendant knew that the victim lacked capacity to give such consent. Because the judge may have applied an erroneous legal standard for proof of the specific

---

[1] The judge found the defendant not guilty of obtaining a signature under false pretenses in violation of G. L. c. 266, § 31.

intent to steal, we vacate the conviction and remand for a new trial.[2]

Background. Taken in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the judge could have found the following facts. The victim lived alone in her home in Lowell. She and her late husband owned the home, and she lived there for more than fifty years. The home was her only asset. The defendant, a building inspector in Lowell, was one of the victim's neighbors. Shortly after moving in, the defendant and the victim's husband developed a tense relationship due to disputes over the boundaries of their respective properties. After the victim's husband died, the defendant inquired about buying the victim's home. She refused to sell to him and told several people, including her attorney, that she did not want to sell her property to the defendant. She expressed her resolve not to sell to the defendant in colorful language. She told one person, "That son of a bitch wants my house, and he's not getting it." She said to another that there was "no way in

---

[2] Due to the length of time that has elapsed since the trial in this case, the judge was unable to respond to an order of this court seeking clarification whether the guilty finding was based on the defendant's knowledge of the victim's lack of mental capacity to consent.

hell" she would sell to the defendant and that her late husband would "flip over in his grave" if she did.

In July, 2001, the victim's attorney prepared the victim's will naming her best friend as the sole beneficiary of her property, including her home. The victim had no family. When the friend's health began to deteriorate in 2007, the friend's daughter, Lisa Miele, began to visit with and provide help to the victim. In 2007, the victim substituted Miele as her health care proxy, a duty previously undertaken by Miele's mother, who died in 2009.

On July 13, 2010, the victim broke her hip and was taken to a hospital where she was scheduled to undergo surgery the following day. The victim was anxious about the surgery and summoned her attorney the afternoon before the surgery to discuss her will. In the conversation with her attorney, the victim explained that her best friend had died and that she wanted the friend's daughter to receive whatever her friend would have received under the prior will. The attorney attended to the matter that day and returned to the hospital later that night, before the surgery, with the revised will. As instructed by the victim, the attorney revised the will to bequeath the victim's house and property to Miele. The victim reviewed the revised will and signed it in the presence of two witnesses and a notary brought to the hospital by the attorney.

The next day the victim underwent surgery, and on July 17, 2010, she was transferred to a nursing home for rehabilitation. On admission to the nursing home, a medical staff member administered a "mini mental status exam" that showed mild cognitive deficits and concluded that the victim was not competent to sign any further paperwork. A supervisor informed Miele that as the victim's health care proxy, she would have to sign documents on the victim's behalf.

After a few days at the nursing home, the victim's condition deteriorated. She suffered an infection that caused a great deal of pain and discomfort. The medical staff administered antibiotics, antidepressants, and oxycodone, which, according to one of the treating nurses, could cause confusion and sedation. After receiving the medication, the victim was at times incoherent and incapable of expressing herself. The victim's condition was apparent to Miele, who visited the victim every day after the surgery. The defendant also visited the victim, and during one visit when both Miele and the defendant were present, the defendant questioned Miele about her constant attention to the victim.

During the victim's stay at the nursing home, the staff became aware that the defendant had asked the victim to sign documents, the nature and contents of which were unknown to the victim. On July 21, 2010, Miele relayed this information to the

victim's attorney.  The victim's roommate also was aware of the defendant's efforts to get the victim to sign unspecified documents.  The victim's roommate promised to telephone Miele if the defendant returned with documents for the victim to sign.

On July 26, 2010, Miele visited the victim as usual but the victim was barely aware of Miele's presence.  Miele left with a promise to return after dinner.  Shortly thereafter, the defendant arrived at the victim's bedside with a notary public and one other person.  The victim's roommate, who was present when the defendant arrived, saw the defendant hand a document to the victim.  Without explaining the contents, the defendant asked the victim to sign the document.  The victim's roommate yelled to the victim not to sign it, but she did.  The victim's roommate immediately telephoned Miele.  When Miele arrived to investigate what had happened, the victim told Miele that she did not know what she had signed.  The defendant did not provide a copy of the document to the victim.

A few days later, the victim was taken to the hospital, where she fell into a coma.  She died on August 12, 2010.  After the victim's death, Miele learned that the victim had signed a quitclaim deed conveying her property to the defendant.

Subsequently, Detective Thomas Hultgren of the Lowell police department contacted the defendant and requested an interview regarding the circumstances of the transfer of the

victim's property to the defendant. The defendant agreed to an interview and met with Detective Hultgren. During that interview, the defendant claimed that, prior to the victim's hospitalization for her hip injury, the victim and he had reached an oral agreement for the sale of her property. The terms of the alleged agreement were that the defendant would pay the victim $100,000, pay off the municipal liens, and grant the victim a life estate in the property. The victim would take back two mortgages in the amount of $50,000 and $42,000. These mortgages would be discharged after fifteen years or on the victim's death, whichever occurred first. The defendant showed Detective Hultgren a copy of the notarized quitclaim deed the victim signed on July 26, copies of two notarized mortgages that the victim did not sign, and a document entitled "Life Estate," which the victim also did not sign. Even though the defendant was aware that the victim was represented by an attorney and that Miele was her caretaker, he never told either of them about the agreement for the sale of the victim's property. The defendant did not seek the assistance of an attorney, opting to prepare all of the documents himself. As to the victim's condition on the date of the transaction, the defendant claimed that she "looked good" and "knew what was going on" when he asked her to sign the deed. He also told Detective Hultgren

that the victim "looked better on July 26 than [she had] in months."

The defendant recorded only the $50,000 mortgage, claiming that he did so as a protective measure so that the nursing home would be unable to get a lien on the victim's house in the event that she could not pay her bills.  He paid no money to the victim.  Notwithstanding the asserted agreement to grant the victim a life estate in the property, the defendant immediately changed the locks on the property, denying access to Miele and the victim's attorney.

Discussion.  At the close of the Commonwealth's evidence and again at the close of all the evidence, the defendant filed motions for required findings of not guilty.  The motions were denied, and after the close of all the evidence, the judge found the defendant guilty of larceny from a person sixty years of age or older and not guilty of obtaining a signature by false pretenses.  On appeal, the defendant argues that the judge erred in denying the motion for a required finding of not guilty of larceny, claiming error in the judge's ruling that the unlawful taking element of larceny may be proved by evidence that the victim lacked the mental capacity to consent to the transaction. He contends that without this evidence, the Commonwealth's case was otherwise insufficient to prove larceny.  The defendant also claims, for the first time on appeal, that because the

transaction granted the victim a life estate in the property, the evidence was insufficient to prove beyond a reasonable doubt intent to deprive the victim of her property "permanently."

1. <u>Standard of review</u>.  We review a claim of insufficiency of the evidence under the oft-repeated standard articulated in <u>Latimore</u>, 378 Mass. at 677.  The test is whether "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).  <u>Id</u>., quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 318-319 (1979).

2. <u>The elements of larceny</u>.  General Laws c. 266, § 30 (5), inserted by St. 1995, c. 297, § 9,[3] provides in relevant part as follows:  "Whoever steals or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another, sixty years of age or older . . . shall be guilty of larceny . . . ."  This provision of the statute is identical to G. L. c. 266, § 30 (1),[4] except for the

---

[3] In 1995, in "An Act relative to the assault, abuse, neglect and financial exploitation of an elderly or disabled person," the Legislature amended G. L. c. 266, § 30, to add the new paragraph (5), which specified the enhanced punishment for larceny of property of persons sixty years of age or older.  See St. 1995, c. 297, § 9.  The amendment did not change the elements of larceny.

[4] The larceny statute, G. L. c. 266, § 30, merged the three formerly separate common-law crimes of larceny by theft, larceny

specification of an enhanced penalty for larceny of the property

of persons sixty years of age or older.[5]  A conviction of larceny

under G. L. c. 266, § 30 (1), requires the Commonwealth to prove

beyond a reasonable doubt an unlawful taking and carrying away

of the property[6] of another with the specific intent to deprive

the person of the property permanently.  See Commonwealth v.

Mills, 436 Mass. 387, 394 (2002).  In this appeal, only the

unlawful taking and intent elements are at issue.  We consider

each in turn.

3.  Unlawful taking.  The Commonwealth prosecuted the

defendant on the theory that the purported sale of the victim's

---

by embezzlement, and larceny by false pretense into one crime:
larceny.  Commonwealth v. Labadie, 467 Mass. 81, 87, cert.
denied, 135 S. Ct. 257 (2014), citing Commonwealth v. Mills, 436
Mass. 387, 391–392 (2002).  An indictment pursuant to G. L.
c. 266, § 30, need not specify the particular type of larceny
charged against the defendant.  The crime may be established by
evidence sufficient to warrant a conviction on any one of the
three formerly separate charges.  Mills, supra at 392, citing
Commonwealth v. King, 202 Mass. 379, 388 (1909).

[5] The enhanced penalty provision in G. L. c. 266, § 30 (5),
for larceny over $250 increases the maximum punishment to
"imprisonment in the [S]tate prison for not more than ten years
or in the house of correction for not more than two and one-half
years, or by a fine of not more than [$50,000] or by both such
fine and imprisonment."  Under G. L. c. 266, § 30 (1), a person
convicted of larceny is subject to a maximum punishment of not
more than five years' imprisonment in the State prison or
payment of a $25,000 fine and not more than two years in a house
of correction.

[6] The statutory definition of property includes "a deed or
writing containing a conveyance of land."  G. L. c. 266,
§ 30 (2).

property to the defendant was in fact a larcenous taking.  The
argument was that the victim's apparent consent to the
transaction was vitiated by her mental incapacity at the time
she executed the deed transferring her property to the
defendant.  Although the Commonwealth cited no Massachusetts
case[7] expressly allowing evidence of the victim's mental state to
prove larceny, the judge accepted this premise and instructed
himself as follows:

> "[T]he court . . . may find that the defendant unlawfully
> took property owned by [the victim] if the Commonwealth has
> proved beyond a reasonable doubt, one, that on July 26,
> 2010, when the defendant presented [the victim] with a
> quitclaim deed conveying [the property] to himself . . .
> [that the victim] was so mentally impaired that she could
> not understand the transaction that the defendant was
> asking her to enter into, including that she was selling
> her home to the defendant . . . [a]nd, two, that at that
> time the defendant knew or reasonably should have known
> that [the victim] was that incapable of understanding the
> transaction that the defendant was asking her to enter
> into."

---

[7] Our cases have not held explicitly that a property owner's
mental state is probative of the unlawful taking element of the
crime of larceny by theft.  Explicit references to consent as
affected by the owner's mental state are less common because in
the typical larceny prosecution, the lack of consent will be so
obvious from the circumstances that it is unnecessary to prove
this fact by direct evidence.  See, e.g., Commonwealth v.
Donovan, 395 Mass. 20, 26 (1985) (placing phony night deposit
box at bank and taking cash deposits placed in box);
Commonwealth v. Luckis, 99 Mass. 431, 432 (1868) (grasping
object in another's pocket); Commonwealth v. Vickers, 60 Mass.
App. Ct. 24, 26 (2003) (concealing items from retail shop in
beach-style bag without paying for them); Commonwealth v. Lent,
46 Mass. App. Ct. 705, 708 (1999) (taking and carrying away
backpack of victim of attempted kidnapping).

In settling on this principle as a correct interpretation of Massachusetts law, the trial judge relied on cases from other jurisdictions, State v. Calonico, 256 Conn. 135 (2001); and People v. Camiola, 225 A.D.2d 380 (N.Y. 1996).[8]  The defendant seizes on the judge's reliance on these cases to bolster his argument that, under Massachusetts law, the victim's mental incapacity has no bearing on the crime of larceny and that, without legislative action, such evidence may not be considered in the unlawful taking calculus.[9]  We disagree.

---

[8] The court in State v. Calonico, 256 Conn. 135 (2001), interpreted a statute closely analogous to G. L. c. 266, § 30 (1), to permit consideration of the victim's mental state on the issue of consent.  The Connecticut statute, Conn. Gen. Stat. § 53a-119 (2013), defines larceny as follows:  "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."  The Calonico court noted that, "[a]lthough [the statute does not] specifically enumerate[] lack of consent as an element of larceny . . . , we agree with New York's interpretation of N.Y. Penal Law 155.05(1), a larceny statute containing language similar to that of [Conn. Gen. Stat.] § 53a-119, that '[a] donative victim's inability to consent to [a] taking [is a factor] . . . properly considered in the context of a traditional understanding of the larceny statute.'"  Calonico, supra at 154, quoting People v. Camiola, 225 A.D.2d 380, 380-381 (N.Y. 1996).

[9] The defendant's argument mirrors the dissent in Commonwealth v. Reske, 43 Mass. App. Ct. 522, 532-533 (1997) (Gillerman, J., dissenting), which posited that because a victim's mental incapacity is not an element of the offense of larceny, it may not be offered as proof of the crime except by legislative intervention.  As did the majority in Reske, we reject that limitation on the nature of evidence probative of the defendant's guilt.

Our review of the common-law underpinnings of the crime of larceny persuades us that, although lack of consent is not an element of the offense, it is the sine qua non of the crime of larceny. In Commonwealth v. James, 1 Pick. 375, 383 (1823), this court affirmed a larceny conviction with the observation that the jury's guilty verdict is "well warranted, if, at the time the defendant took [the owner's property, it was] not lawfully in [the defendant's] possession with the consent of the owner" (emphasis added). Similarly, in Commonwealth v. White, 123 Mass. 430, 434-435 (1877), the court held that larceny is proved if the evidence establishes that the defendant "wrongfully and fraudulently [took] and carried away the goods of another, with the felonious intent to convert them to his own use and make them his own property without the consent of the owner"[10] (emphasis added). These early cases, applying a definition of larceny essentially unchanged since that time, validate our view that the judge properly allowed evidence of the victim's mental incapacity to establish the unlawful nature of the taking of her property. In circumstances such as this, where larceny is committed through what appears to be a

---

[10] The lack of consent is an implicit factor in other contexts as well. See, e.g., Commonwealth v. Green, 399 Mass. 565, 567 (1987) (lack of consent implicit in legal definition of both assault and battery and indecent assault and battery).

consensual transaction, evidence probative of whether the victim actually consented may be admitted during the Commonwealth's case-in-chief or in rebuttal to the defense of consent.[11]

Further, the Commonwealth may introduce evidence of the victim's mental capacity as probative of whether the victim actually consented to a transaction.  The notion that consent may be vitiated by mental incapacity is recognized in our criminal jurisprudence.  In Commonwealth v. Blache, 450 Mass. 583, 590 (2008), this court reaffirmed the long-standing rule, first articulated in Commonwealth v. Burke, 105 Mass. 376, 380-381 (1870), that the lack of consent element in a rape prosecution may be proved by evidence that the victim lacked the

---

[11] Our view that larceny may be proved by evidence that the property owner lacked the mental capacity to consent is in harmony with most of the cases from other jurisdictions where the courts have interpreted similar statutes that do not include lack of consent as an element of the crime.  See Gainer v. State, 553 So. 2d 673, 679 (Ala. Crim. App. 1989) ("even without an express statutory provision . . . mental deficiency on the part of the victim, which is known or should be known to the defendant, can render ineffective the apparent consent by that victim in a prosecution for theft"); Calonico, 256 Conn. at 153 (holding that mental capacity may be considered on issue of victim's intent); People v. Cain, 238 Mich. App. 95, 128-129 (1999) (affirming larceny conviction because victim lacked mental capacity to consent to taking); Camiola, 225 A.D.2d at 380-381 (holding that jury may consider victim's mental capacity in determining whether defendant acted with victim's knowledge and consent).  Cf. State v. Maxon, 32 Kan. App. 2d 67, 79-80 (2003) (concluding that capacity of mentally handicapped victim could not be considered under felony theft statute because defendant's actions already covered under specific offense of mistreatment of dependent adult).

capacity to consent. See Commonwealth v. Urban, 450 Mass. 608, 614 (2008). In Blache, supra, the victim's lack of capacity to consent was directly relevant to an element of the crime and, therefore, unquestionably relevant in establishing the defendant's guilt.

Our case law, however, has not limited evidence of capacity to consent to only those cases where consent is an element of the offense. In Commonwealth v. Reske, 43 Mass. App. Ct. 522, 524, 526 (1997), a case involving a prosecution for larceny by false pretenses[12] brought under G. L. c. 266, § 30 (1), the Appeals Court weighed the victim's mental capacity to appreciate the exploitative nature of the transaction promoted by the defendant. The defendant, a car salesman, was convicted on evidence that he sold six different vehicles at inflated prices to a mentally disabled customer. Id. at 527. In challenging the sufficiency of the evidence, the defendant asserted a variation of "caveat emptor" as a defense.[13] The court rejected the

---

[12] Larceny by false pretenses requires proof of the following elements: (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and consequently parted with property. Mills, 436 Mass. at 396-397.

[13] The court characterized the defense as, "[I]t is not a crime to gull a willing dupe." Reske, 43 Mass. App. Ct. at 524.

argument, reasoning that the owner's mental incapacity was highly probative of the defendant's intent to induce the victim to rely on a false statement[14] and thereby part with his property. The fact that the victim's mental state was not an element of the offense did not preclude consideration of that evidence because it was otherwise relevant to an issue in the case. Likewise, it is appropriate here to allow such evidence of the victim's mental incapacity insofar as it may be probative of the unlawful taking element of the offense.

Consent is a live issue in this case because the Commonwealth's prosecution rested on the theory that the victim did not consent to the transaction presented by the defendant. In such a case, the Commonwealth is entitled, and indeed required, to prove the lack of consent beyond a reasonable doubt. See Commonwealth v. O'Connell, 438 Mass. 658, 664 (2003) (obligating Commonwealth to prove beyond reasonable doubt absence of authority where defendant claims "authority" for taking). In so doing, the Commonwealth may meet its burden to prove the lack of consent by evidence showing that it was

---

[14] The defendant claimed in that case that the statements asserting an inflated value for the vehicles were not false, apparently because a vehicle was worth whatever a customer would pay for it. The court declined to credit this argument, noting that the statements were indeed false because the values would be so obviously wrong to any person of normal intelligence. Reske, 43 Mass. App. Ct. at 524, 526.

neither voluntarily nor knowingly given.  See Commonwealth v. Jackson, 432 Mass. 82, 85-86 (2000) (applying test to analogous circumstances of waiver of rights under Miranda v. Arizona, 384 U.S. 436 [1966]).  Both of these factors entail a consideration of the totality of circumstances surrounding consent, including the mental state of the person whose consent is at issue.  See Commonwealth v. Edwards, 420 Mass. 666, 673 (1995) (examining "rational intellect" and "free will" to determine voluntariness).  Therefore, the victim's mental capacity was properly considered in the totality of the circumstances determinative of whether the victim actually consented to the transaction.

Except for the argument that the law precludes consideration of the victim's mental state, the defendant does not suggest that the evidence is otherwise insufficient to prove that the victim lacked the mental capacity to consent to the transaction. Therefore, we need not address the factual sufficiency of the evidence of an unlawful taking.

4. Specific intent to steal.  On the intent element of larceny, the judge instructed himself that the requisite intent may be proved by evidence that the defendant either knew or should have known that the victim lacked the mental capacity to

consent to the transaction.[15] This was error. Larceny is a specific intent crime that requires the Commonwealth to prove beyond a reasonable doubt that the defendant intended to steal or deprive the owner permanently of the use of the property. G. L. c. 277, § 39. A defendant's mistaken but honest belief that he has a right to the property negates the intent to steal. See Commonwealth v. Liebenow, ante 151, 157 (2014); Commonwealth v. Vives, 447 Mass. 537, 542 (2006); Commonwealth v. Stebbins, 8 Gray 492, 495-496 (1857).[16] The defendant's claim at trial that he honestly believed the victim voluntarily and intelligently executed the quitclaim deed transferring her property to him implicates this principle. Cf. Commonwealth v. Newhook, 34 Mass. App. Ct. 960, 961 (1993) ("defense of honest . . . belief may negate the element of a specific and felonious intent to steal").

Where, as here, a defendant asserts a claim of right defense that allows for an honest, but mistaken, belief in the

---

[15] Because the defendant neither raised this issue before the judge nor objected to the judge's instructions on these grounds, we review this aspect of the charge to determine whether it resulted in a substantial risk of a miscarriage of justice. Commonwealth v. Bolling, 462 Mass. 440, 452 (2012).

[16] Although some prior cases concerning the claim of right defense suggested a two-part test, whether the belief was honest and whether it was reasonable, we recently clarified in Commonwealth v. Liebenow, ante 151, 160 (2014), that an honest belief need not be objectively reasonable.

defendant's legal right to take property, we hold that it is not enough that the Commonwealth prove that the defendant should have known of the victim's incapacity.  Instead, if the defendant meets his or her burden of production, the Commonwealth must prove beyond a reasonable doubt that the defendant knew that the victim lacked the mental capacity to consent to the transaction.  Liebenow, supra at 161 n.15, citing Vives, 447 Mass. at 541.  The burden of production is met "if any view of the evidence" would support a factual finding that the defendant honestly believed he or she had a legal right to take property.  Liebenow, supra at 156, quoting Vives, supra. The defendant's production of the quitclaim deed signed by the victim would likely meet the defendant's burden in this regard and, thereby, shift the burden to the Commonwealth to disprove the defendant's claim of right.  See Commonwealth v. Gouse, 461 Mass. 787, 806 (2012) (producing license to carry firearm would meet defendant's burden of production in asserting affirmative defense of license to unlawful possession of firearm charge).

If a defendant meets this burden of production, he or she is entitled to an instruction directing a not guilty finding if the Commonwealth fails to establish by proof beyond a reasonable doubt that the defendant did not honestly believe that the victim voluntarily and intelligently entered into the transaction.  See Commonwealth v. White, 5 Mass. App. Ct. 483,

488 (1977) ("defendant was entitled to an instruction to the effect that he should be acquitted [of larceny] if the jury should find that the defendant honestly . . . believed that the money he took from [the victim] represented a debt actually due from [the victim] to the defendant").  The judge's instruction fell short of the mark in that it presented the option of a guilty finding based on either actual knowledge that the victim lacked the mental capacity to consent to the transaction or a finding that the defendant should have known that she lacked such capacity.

In determining whether the error created a substantial risk of a miscarriage of justice, "[w]e consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision."  Commonwealth v. Bolling, 462 Mass. 440, 452 (2012), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002). S.C., 444 Mass. 72 (2005).  Because of the possibility that the guilty verdict was based only on proof that the defendant "should have known" of the victim's mental incapacity, we conclude that the error did result in a substantial risk of a miscarriage of justice.

The defendant's other intent argument is unavailing.  The defendant claims that the Commonwealth failed to meet its burden

to prove the intent to deprive the victim permanently of the "use of her property" because the transaction granted her a life estate.  G. L. c. 277, § 39.[17]  This argument fails.

The elements of larceny do not comprehend a permanent deprivation of an owner's "use" of her property.  See Mills, 436 Mass. at 391-392.  Rather, G. L. c. 277, § 39, was enacted only to clarify that the crime of larceny encompasses the formerly separate common-law crimes:  larceny by theft, larceny by embezzlement, and larceny by false pretenses.  The statute did not limit the permanent deprivation to the "use" of one's property.  In any event, the judge could have discredited the defendant's claim that the victim was granted a life estate. The document purporting to create the life estate was not signed by the victim and was not recorded with the deed conveying the property to the defendant.  The judge also could have considered that the defendant secured the property in a manner that would have precluded the victim from entering it should she have chosen to do so.  Absent a determination that the defendant had an honest, albeit mistaken, belief that the victim had the capacity to consent to the transaction, the evidence was

---

[17] The defendant relies on the definition of larceny as the "criminal taking, obtaining or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement and obtaining by criminal false pretenses" (emphasis added). G. L. c. 277, § 39.

otherwise sufficient to prove an intent to deprive the victim of the property permanently.

5. <u>Fair notice of liability</u>.  The defendant argues for the first time on appeal that even if the transaction with the victim was unfair, it may not be punished as a criminal act because our law has not previously permitted consideration of a victim's mental incapacity as evidence of an unlawful taking in a prosecution for larceny.

We are mindful, as the defendant suggests, that the law must provide a "fair warning . . . of what the law intends to do if a certain line is passed" and that a clear line is needed to make the warning fair.  <u>McBoyle</u> v. <u>United States</u>, 283 U.S. 25, 27 (1931).  We recognize also that "[i]t is not the policy of the law to punish criminally private wrongs."  <u>Commonwealth</u> v. <u>Drew</u>, 19 Pick. 179, 185 (1837).  Nonetheless, we do not view our interpretation of the law of larceny as compromising this bedrock principle of the criminal law.  As we have said, the notion of consent to a taking of one's property has deep roots in our jurisprudence relating to the crime of larceny.  See <u>Liebenow</u>, <u>supra</u> at 157, citing <u>Commonwealth</u> v. <u>Brisbois</u>, 281 Mass. 125, 128-129 (1932); <u>Commonwealth</u> v. <u>McDuffy</u>, 126 Mass. 467, 469 (1879); and <u>Stebbins</u>, 8 Gray at 495.  Nor do we narrow the parameters of consent such that conduct previously deemed permissible under our law is now prohibited.  Thus, we discern

no undue risk of prosecution of persons who enter into transactions with an honest but mistaken belief that the other party voluntarily and intelligently agrees to be a participant in a transaction.  See Commonwealth v. Golston, 373 Mass. 249, 254 (1977), cert. denied, 434 U.S. 1039 (1978).

Conclusion.  Because the judge may have applied an erroneous legal standard for the element of specific intent in reaching his guilty finding, the conviction must be vacated. Therefore, we remand the case for a new trial on the larceny indictment where the Commonwealth must prove beyond a reasonable doubt a specific intent to steal by evidence that the victim lacked the mental capacity to consent to the transaction and that the defendant knew that she lacked the mental capacity to consent to the transaction.

So ordered.