NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1172

COMMONWEALTH

vs.

SHAYNA BRETAL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the Superior Court, the defendant was convicted of larceny over $1,200, in violation of G. L. c. 266, § 30 (1).[1] She now appeals, claiming that there was insufficient evidence to support the judge's finding of guilty. We affirm.

Background. Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences in the Commonwealth's favor, the judge could have found the following facts. In November 2020, the defendant was employed as a receptionist and office manager at a dental

---

[1] The docket shows that a bench trial was scheduled but then cancelled after the defendant pleaded guilty. In contrast, the transcript of the bench trial shows, and the parties at oral argument agreed, that the case was tried and resulted in a guilty finding. The erroneous entries may be corrected on motion of either party in the trial court.

office, where she was responsible for, among other things, collecting and depositing payments from patients. The defendant was having difficulty paying her car insurance premiums. On or around November 16, 2020, she asked the owner of the dental practice for a loan of $4,025 to help with the premiums; the owner refused.

On November 17, 2020, a patient at the dental office made a cash payment of $1,500 toward the $3,000 cost of an upcoming procedure. The patient gave the money to a woman behind the counter with dark hair. The defendant's hair color changed during her period of employment but was sometimes a dark color. There were only three other employees working at the office during that period -- a dentist (who did not see the payment being made) and two dental assistants, one with blonde hair and one with dark hair. All four employees had access to the area behind the desk, but only the defendant spent significant time there. Sometime after the patient left the office, the dentist saw cash in an open drawer directly next to where the defendant was sitting.

In January 2021, the dental practice's financial records showed that the patient had made a payment of $1,500 via check earlier that month, but there was no record showing that the cash payment made in November was either received or deposited in the bank. The owner of the practice asked the defendant

2

about collecting the outstanding balance of $1,500 from the patient. The defendant told the owner that she knew the patient and that the patient had agreed to a "sloppy payment plan." When the patient thereafter failed to make the first payment on what the defendant had told the owner was the expected date, the defendant told the owner that the patient was unable to come in because he was being tested for COVID-19.

The patient, however, was unaware of any outstanding balance until the owner contacted him in February or March 2021; he had not agreed to any payment plan. Further, he never told anyone at the practice that he was getting tested for COVID-19. When the owner confronted the defendant about the missing money in March, the defendant walked out of her shift and resigned via text message later that day. Although the defendant later sued the owner over an unrelated wage dispute, she did not cite that dispute as her reason for resigning.

Discussion. The defendant contends on appeal that there was insufficient evidence to support her conviction for larceny. We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "That [a] case . . . [is] 'circumstantial' in some

sense of that dubious term does not suggest that the proof [is] insufficient. . . . A web of convincing proof can be made up of inferences that are probable, not necessary." Commonwealth v. Best, 381 Mass. 472, 483 (1980).

"A conviction of larceny under G. L. c. 266, § 30 (1), requires the Commonwealth to prove beyond a reasonable doubt an unlawful taking and carrying away of the property of another with the specific intent to deprive the person of the property permanently." Commonwealth v. St. Hilaire, 470 Mass. 338, 343 (2015). The defendant argues that there was insufficient evidence that any money was actually taken, that the defendant ever possessed the money, or that it was she who took it from where it should otherwise have been. We are unpersuaded.[2]

First, it was reasonable to infer that the cash was taken, not merely lost due to an accounting error. Testimony from the patient, as well as bank records confirming that he accessed the safety deposit box where he kept his cash, showed that he dropped the cash off at the dental office on November 17. Testimony from the owner and the dentist showed that the cash

_____

[2] At oral argument the defendant asserted for the first time that, because she came into possession of the money lawfully, the evidence at most established embezzlement rather than larceny by stealing. As this issue was not raised either to the trial judge or in the appellate briefs, we decline to consider it. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1629 (2019).

4

was never recorded as received or deposited at the bank used by the dental practice.  The absence of paper records or expert testimony from a forensic accountant goes to the weight of the evidence, but it does not render impermissible the inference that the money was received at the office and then taken.  Moreover, the defendant's lies about the patient's payment plan and COVID-19 test support an inference of malfeasance, rather than an innocent mistake.  See Commonwealth v. Porter, 384 Mass. 647, 653 (1981) (defendant's intentionally false and misleading statements supported inference of consciousness of guilt).

Secondly, the evidence was sufficient to infer that the defendant both possessed the money and took it from its rightful place.  The dentist saw cash in the open drawer next to the defendant after the patient left the office.  Although the testimony was somewhat vague, the defendant also fit the patient's description of the woman who collected his money, and, unlike the other employee who might have fit that description, it was the defendant's responsibility to collect such payments.  Thus it was reasonable to infer that the defendant was in possession of the cash when it went missing.  Further, the fact that the defendant asked for, and was denied, a loan from the owner the same week as the theft suggests both that she needed money when the theft occurred and that she had reason to resent her employer.  Finally, as mentioned above, the false excuses

5

offered by the defendant support an inference that she had taken the money and was attempting to conceal her wrongdoing.

Even if, as the defendant argues, some of these facts taken alone may not have been sufficient to support her conviction, we conclude that, when combined, they are enough to find beyond a reasonable doubt that it was the defendant who took the cash. See Commonwealth v. Robinson, 482 Mass. 741, 745-746 (2019) (concluding that there was sufficient evidence of perpetrator's identity where Commonwealth provided evidence of motive, means, opportunity, and consciousness of guilt).

Judgment affirmed.

By the Court (Meade, Massing & Sacks, JJ.[3]),

Assistant Clerk

Entered: February 2, 2024.

---

[3] The panelists are listed in order of seniority.