NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-258

COMMONWEALTH

vs.

RAPHEAL ADEBOWALE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On June 20, 2019, the defendant was indicted for larceny over $1,200[1] from a person over sixty years old and money laundering. The defendant's motion to dismiss the indictment was denied, and the defendant was later convicted following a jury trial in the Superior Court. On appeal, the defendant argues that (1) the evidence before the grand jury was insufficient to establish probable cause that he committed the

---

[1] The indictment states "larceny of property over $1,200" but cites G. L. c. 266, § 30 (5), which sets forth separate punishments for larceny where the subject property exceeds or does not exceed a threshold of $250, as opposed to $1,200. The Superior Court docket reflects a charge of larceny over $250 and the parties' arguments in this appeal treat it as such. Nothing relevant to this appeal turns on this distinction.

crimes and (2) the evidence at trial was likewise insufficient. We affirm.

Background.  Because the defendant challenges both the sufficiency of the evidence presented to the grand jury and the evidence presented at trial, we summarize the evidence presented at each proceeding separately.[2]

1.  The evidence at the grand jury proceeding.  We summarize the evidence presented to the grand jury in the light most favorable to the Commonwealth.  See Commonwealth v. Clinton, 491 Mass. 756, 758 (2023).

In October 2018, the victim, E.F.,[3] who was sixty-six years old, set up an online dating account, where she met "James Deere" (Deere).  Deere told E.F. that he was a successful executive in the financial industry and that he worked for a company called "Perpetual Investments," a corporation based in Australia.  Deere expressed a desire to move to the United States so he could marry E.F. and share his bank accounts with her.  Thereafter, E.F. received "spoofed"[4] e-mail messages

---

[2] We acknowledge that the grand jury minutes remain impounded and discuss the evidence as presented to the grand jury only as necessary to resolve this appeal.

[3] We use the victim's initials to protect her privacy.

[4] There was evidence that a spoofed e-mail message "occurs when a suspect creates either a fraudulent email account or registers a website using a name that's similar to a legitimate business name, but with a tiny change in the name, which then

2

purporting to be from both Perpetual Investments and the Bank of Birmingham in England (the Birmingham bank).

Deere led E.F. to believe she set up an account with the Birmingham bank, which would, according to Deere, allow Deere to transfer funds from his Perpetual Investments account into E.F.'s account. E.F., believing her money would be returned, wired forty thousand dollars to a bank account in Texas. E.F. received another spoofed e-mail message from the Birmingham bank informing her that eleven million dollars had been deposited in her account, apparently to convince her that Deere had deposited these funds in her account. She then received a spoofed e-mail message from the Birmingham bank asking for over $160,000 to be paid for "tax clearance." She then wired $111,000 to a bank account in California. After that, she received another spoofed e-mail message from a different financial institution asking her to pay approximately seventy-five thousand dollars for a "fund release order." She wired the money to a bank account registered to the Jorobri Corporation (the corporation) at Sun Trust Bank in Florida.

Through a mutual acquaintance, E.F. contacted James Carney, an investigator in the computer crimes unit at the Essex County

---

generates an email header which would lead one to believe it was coming from a legitimate banking institution, but in fact, it's not."

3

District Attorney's office.  After interviewing E.F., Carney searched the Florida Secretary of State's website and determined that a person named "John Robert Richards" (Richards) created a Florida entity called the Jorobri Corporation on October 11, 2018, in an online transaction.  Richards provided a Florida address, which Carney determined was "bogus."  Carney also learned that the corporation had a bank account (the corporation's account) at Sun Trust Bank in Florida.  Carney obtained the corporation's bank records and confirmed that E.F.'s wire transfer was deposited in the corporation's account. He also saw a deposited cashier's check from a person named M.R.[5] Carney contacted M.R., obtained a copy of the check, and discovered that it was made payable to the corporation and Richards.  Using the delivery address on the check, Carney conducted a reverse driver's license search.  The search revealed that the address on the check was the same address as on a Florida driver's license issued to the defendant.  The defendant obtained the license on October 16, 2018, five days after the corporation was created.  Carney also determined that Sun Trust Bank closed the corporation's account on January 9, 2019, due to fraudulent activities.

---

[5] We use initials to protect this individual's privacy.

Carney also subpoenaed from Sun Trust Bank photographs and video footage corresponding to the date, time, and branch location of ATM withdrawals from the corporation's account. Several of these images depicted a man who looked like the defendant as depicted on his driver's license. Carney testified that at least one of the images that depicted a man who looked like the defendant was taken on the same date and at the same Sun Trust Bank branch location as a withdrawal from the corporation's account. The grand jury indicted the defendant for one count of larceny over $1,200[6] from a person over sixty years old and one count of money laundering.[7]

Prior to trial, the defendant moved to dismiss the larceny count. That motion was denied.

2. The evidence at trial. We summarize the evidence presented at trial "in the light most favorable to the prosecution" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

---

[6] See note 1, supra.

[7] The grand jury also heard extensive testimony about another suspect, Hassan Abbas. Carney testified that E.F. wired funds to the account of a company called Sparta Gijon created by Abbas. Carney obtained the bank statements for that account and found several multi-thousand-dollar wire transfers to the account, including those from E.F. The statements also reflected wire transfers out of that account and to Abbas at an address in Chicago. Abbas was indicted for one count of larceny over $1,200 from a person over sixty years old and money laundering. The defendant was tried separately from Abbas.

5

The Commonwealth called two witnesses:  E.F. and Carney. E.F. recounted her experience meeting Deere online and Deere instructing her to make wire transfers to multiple accounts, including the corporation's account.  E.F. also testified she had never met the defendant in person.  Carney testified to almost exactly the same information described in his grand jury testimony:  the communications between E.F. and Deere, the spoofed e-mail messages, the creation of the corporation and the corporation's account at Sun Trust Bank by Richards in October 2018, E.F.'s wire transfer to the corporation's account, M.R.'s cashier's check addressed to the defendant's address on his driver's license, and the surveillance images from Sun Trust Bank ATMs and branch locations, which were taken at times and locations that corresponded with transactions in the corporation's account.

The corporation's bank records reflected that approximately $300,000 was deposited in its account and approximately the same amount was wire transferred or withdrawn in a three-month period between October 2018 and January 2019, when the bank closed the account.  Around thirty thousand dollars was manually withdrawn at ATMs and branch locations.  Sun Trust Bank surveillance images showed that the same individual made most of the manual withdrawals.  Again, the person captured in these images looked like the defendant as depicted on his driver's license.

6

At the end of the Commonwealth's case, the defendant orally moved for a required finding of not guilty on both charges. The judge denied that motion. The jury found the defendant guilty of one count of larceny over $250 from a person over sixty years old and one count of money laundering. The defendant timely appealed.

Discussion. 1. Sufficiency of the grand jury evidence. Generally, "a court will not review the competency or sufficiency of the evidence before a grand jury." Commonwealth v. O'Dell, 392 Mass. 445, 450 (1984). That rule is subject to the exception that "the grand jury must hear sufficient evidence to establish the identity of the accused and probable cause to arrest him" (citation omitted). Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). "This standard is much lower than that required for a finding of guilt." Commonwealth v. Lounge, 87 Mass. App. Ct. 906, 907 (2015), citing Commonwealth v. Moran, 453 Mass. 880, 886 (2009).

The defendant's motion to dismiss was directed only to the indictment charging larceny pursuant to G. L. c. 266, § 30 (5). To obtain this indictment, the Commonwealth had to establish probable cause that the defendant (1) unlawfully took and carried away the property of another (2) who was sixty years old or older (3) with the specific intent to deprive her permanently

7

of the property.  See Commonwealth v. St. Hilaire, 470 Mass. 338, 343 & n.4 (2015).

The Commonwealth proceeded under a joint venture theory and thus had to establish probable cause that "[the defendant] had actually associated [himself] with the criminal venture and assisted in making it a success" (citation omitted). Commonwealth v. Brown, 477 Mass. 805, 813 (2017).  "Knowing participation in a criminal offense may take any of several forms, and includes providing aid or assistance in committing the crime" (quotation and citation omitted).  Id. at 812-813. The Commonwealth did not have to "prove precisely what role the defendant played" (citation omitted).  Commonwealth v. Lee, 483 Mass. 531, 547 (2019).  Accordingly, the Commonwealth had to establish probable cause that the defendant himself satisfied the elements of larceny or was a joint venturer in a larceny. The Commonwealth was permitted to rely on circumstantial evidence.  See Commonwealth v. Baez, 494 Mass. 396, 400 (2024) ("The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth" [citation omitted]).

The defendant contends that the grand jury heard insufficient evidence to establish probable cause that he intended to participate in the alleged larceny scheme because the Commonwealth could not show any association between the

8

defendant and his codefendant, Hassan Abbas,[8] or the defendant and the victim.  In addition, the defendant argues that the evidence was insufficient where the Commonwealth could not show that the defendant had exclusive control of the corporation's account.  We disagree.

The Commonwealth presented to the grand jury dated and time-stamped surveillance images of the same individual using the ATMs at multiple Sun Trust Bank locations, which the grand jury could compare to dated and time-stamped transactions in the corporation's bank records to infer that he was making withdrawals from the corporation's account.  The grand jury could then compare those images with the defendant's driver's license to establish probable cause that the defendant executed those transactions.  The grand jury also heard testimony and received evidence that another victim of the scheme, M.R., mailed a cashier's check, payable to the corporation, to the address the defendant listed on his driver's license, that it was deposited in the corporation's account on the same day that it was delivered to defendant's home, and that he withdrew funds from the corporation's account on the following day.  This evidence was more than sufficient to establish that the defendant participated in the alleged larceny scheme.  See

---

[8] See note 7, supra.

9

Commonwealth v. Hyde, 88 Mass. App. Ct. 761, 771-772 (2015) (grand jury indictment for larceny supported entirely by circumstantial evidence sufficient).[9]

2. _Sufficiency of the trial evidence_. When reviewing the denial of the defendant's motion for a required finding of not guilty, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Latimore, 378 Mass. at 677. "Circumstantial evidence is sufficient to find someone guilty beyond a reasonable doubt and inferences drawn from such circumstantial evidence need only be reasonable and possible; [they] need not be necessary or inescapable" (quotation and citation omitted). Commonwealth v. Davis, 487 Mass. 448, 462 (2021). "Where conflicting inferences are possible from the evidence, it is for the jury to determine where the truth lies" (quotation and citation omitted). Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

a. _Larceny_. At trial, the Commonwealth had to prove the same elements of larceny discussed above, but beyond a

_____

[9] Because there was sufficient evidence to establish probable cause that the defendant participated in the larceny scheme on a joint venture theory, it was unnecessary to establish probable cause that he also had direct association with the victim or exclusive control of the corporation's account.

reasonable doubt.  See St. Hilaire, 470 Mass. at 343.  On appeal, the defendant argues the Commonwealth presented insufficient evidence to establish that the defendant had the specific intent to unlawfully take or deprive E.F. of her property and that the Commonwealth presented insufficient evidence of a joint venture.  Once again, we disagree.

"Direct evidence of a person's specific intent is not always available, but may be inferred."  Moran, 453 Mass. at 885.  For example, "[i]ntent may be inferred from the defendant's knowledge of the circumstances and subsequent participation in the offense" (quotation and citation omitted).  Commonwealth v. Khan, 92 Mass. App. Ct. 487, 493 (2017).  "[T]he necessary intent is the intent to obtain money from another, sixty years of age or older, by false pretenses by making false statements oneself or by having false statements made by a joint venturer, with the intent that the person, in reliance on the false statements, would part with money."  Id.  Intent to participate in a joint venture may also be proved by circumstantial evidence.  See Woods, 466 Mass. at 713.

There is no dispute in this case that E.F. was a victim of a larceny by false pretenses when she was induced to wire almost seventy five thousand dollars to the corporation's account.  The defendant disputes only the sufficiency of the evidence that he intentionally participated in that scheme.  The Commonwealth

11

presented evidence that (1) the corporation was incorporated in Florida on October 11, 2018, five days before the defendant obtained a Florida driver's license, (2) the corporation's account was opened on October 26, 2018, and an individual closely resembling the defendant made the initial deposit, (3) Richards purportedly both formed the corporation and opened the account, (4) M.R. made a cashier's check for $59,482 payable to the corporation and Richards, (5) on December 13, 2018, M.R. mailed the check to the defendant's residential address and it was delivered on December 14, 2018, (6) on the same date, M.R.'s check was deposited in the corporation's account, (7) on December 15, 2018, a person closely resembling the defendant made multiple ATM withdrawals from the corporation's account, (8) on December 27, 2018, E.F. transferred almost seventy-five thousand dollars to the corporation's account by wire, and (9) over the course of four days, from December 27 to 30, 2018, a person closely resembling the defendant withdrew $4,000 from the corporation's account.

Viewing this evidence in the light most favorable to the Commonwealth, the jury could reasonably have found beyond a reasonable doubt that the defendant was a knowing participant in a larceny scheme. See Brown, 477 Mass. at 813 (evidence that defendant provided some instrumentality that played important role in underlying crime was sufficient for jury to find joint

12

venture); Commonwealth v. Bonilla, 89 Mass. App. Ct. 263, 264-265 (2016) (jury could find specific intent for larceny where defendant's bank activity circumstantially suggested fraudulent behavior).

b. Money laundering. The Commonwealth indicted the defendant for money laundering under G. L. c. 267A, § 2 (3). To prove this charge, the Commonwealth had to prove beyond a reasonable doubt (1) that the defendant directed, organized, financed, planned, managed, supervised, or controlled (2) the transportation of or transactions in property derived from criminal activity and (3) that he did so knowingly, or that a reasonable person would know such property was derived from criminal activity. See G. L. c. 267A, § 2 (3). There is no dispute that the property in this case, the wired funds, was derived from criminal activity.

As to the first element, the defendant argues the evidence was insufficient that he had exclusive control over the corporation's account. However, the evidence, viewed in the light most favorable to the Commonwealth, showed that the defendant opened the corporation's account as Richards, made the initial deposit in the corporation's account, and withdrew four thousand dollars in cash shortly after E.F. wired thousands of dollars into the corporation's account. From this evidence, the jury could reasonably have inferred that the defendant either

13

financed, organized, managed, supervised, or controlled the transactions of the fraudulently obtained property; a finding of any one of these would be sufficient.

As to the third element, the defendant argues he was merely a "pawn" who performed only small transactions, which he characterizes as "salary withdrawals." He submits that the evidence did not support an inference that he knew that the funds were derived from criminal activity. Knowledge is rarely proven by direct evidence and may be inferred from the facts and circumstances. See Commonwealth v. Casale, 381 Mass. 167, 173 (1980). Again, the evidence established that the defendant opened the corporation's account and made the initial deposit, that M.R. mailed a cashier's check for $59,482 to the defendant's address payable to the corporation and Richards -- the name used to create the corporation and open the account -- for delivery on December 14, 2018, that the check was deposited into the corporation's account the same date it was delivered to the defendant's address, that E.F. was defrauded into wiring almost seventy-five thousand dollars to the corporation's account on December 27, 2018, and that from December 27 to 30, 2018, the defendant made withdrawals totaling four thousand dollars from the corporation's account. From this evidence, the jury could reasonably have inferred that the defendant was

14

deeply involved in the larceny scheme and thus knew that the funds in the account were fraudulently obtained.[10]

The defendant also argues that the Commonwealth did not prove that concealment was an animating purpose of the transaction.  However, that is a requirement of G. L. c. 267A, § 2 (2); there is no similar language in § 2 (3).  Cf. Commonwealth v. Braune, 481 Mass. 304, 307-314 (analyzing language of § 2 [2] in depth with no reference or application to § 2 [3]).  Accordingly, the Commonwealth did not have to prove that any of the transactions were designed or motivated by a desire to conceal the scheme.  See Garcia v. Steele, 492 Mass. 322, 326 ("We do not construe terms in isolation; instead, we

---

[10] The defendant also argues that the evidence suggests merely that he was an unwitting "dupe."  This claim is unavailing because the "[t]he proper inquiry is 'whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding.'"  Commonwealth v. Platt, 440 Mass. 396, 401 (2003), quoting Commonwealth v. Lydon, 413 Mass. 309, 312 (1992).  Just because the jury could have accepted a theory that the defendant was "dupe[d]" does not mean the Commonwealth's evidence was insufficient; it is ultimately up to the jury to decide which conflicting theory to accept.  See Woods, 466 Mass. at 713.

15

consider the specific language of a provision in the context of the statute as a whole").

Judgments affirmed.

By the Court (Neyman, Shin & Wood, JJ.[11]),

*Paul Little*

Clerk

Entered:  May 28, 2025.

---

[11] The panelists are listed in order of seniority.