NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-359

COMMONWEALTH

vs.

KELLY W. ALLEN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Kelly Allen, appeals from his conviction of larceny over $250 by a single scheme, in violation of G. L. c. 266, § 30 (1).  The complainant hired the defendant, a contractor, to do renovations on her home and paid him approximately $12,500 between December 2015 and February 2016.  The defendant contends that the evidence was insufficient to sustain the conviction for larceny by stealing.  We agree and reverse.

Background.  Taken in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts.

The defendant first met the complainant in a Home Depot where she was shopping for paint brushes and rollers. The defendant engaged the complainant in conversation and offered to do work on her home. The complainant asked the defendant to install a ceiling fan in her condominium and to do some painting. During his first visit to the complainant's home in December 2015, the defendant offered to do additional work, and the complainant accepted. The defendant wrote a "contractor invoice" that detailed the agreed work and the price, and the complainant made an initial payment of $3,500.

In January 2016, after the defendant started work on the complainant's kitchen and downstairs bathroom, the complainant paid the defendant $6,000 for additional work under a second contractor invoice. The defendant continued to work on the complainant's home, and in early February 2016, the complainant paid the defendant another $3,000.

The defendant installed a new window, ceiling vent and a ceiling, tiling, a toilet, and a sink in the complainant's downstairs bathroom; put a new toilet and sink in the upstairs bathroom; installed new cabinetry, molding, speakers, and recessed lights in the kitchen; and added a ceiling fan and recessed lights in the living room.

The complainant purchased the new toilets and sinks. The defendant purchased a new refrigerator, tools, and a window. He supplied tiles, recessed lighting, and cabinetry. The complainant asked for receipts, but the defendant did not provide them.

The defendant stopped working at the complainant's home after the third payment, in late February or early March. He had not completed all of the contracted work, and the complainant was dissatisfied with the quality of much of the finished work. The defendant left tools, materials, and debris at the complainant's home. The complainant later saw the defendant in Home Depot, and he offered to return some of the money paid for unfinished work. He never did.

Discussion. We review the denial of a motion for a required finding of not guilty to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Mills, 436 Mass. 387, 393 (2002), quoting Latimore, 378 Mass. at 677. "[I]t is not enough for [us] to find that there was some record evidence, however slight, to support each essential element of the offense; [we] must find that there was enough evidence that could have satisfied a

3

rational trier of fact of each such element beyond a reasonable doubt." Latimore, supra at 677-678.

The larceny conviction is based on the theory of larceny by stealing. G. L. c. 266, § 30 (1). For such a conviction the Commonwealth must prove "(1) the unlawful taking and (2) carrying away (asportation) (3) of personal property of another (4) with the specific intent to deprive the person of the property permanently." Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 27 (2003), citing Mills, 436 Mass. at 394. The defendant maintains that there was insufficient evidence of an unlawful taking and intent to steal. We agree.

1. Unlawful taking. "[A]lthough lack of consent is not an element of the offense, it is the sine qua non of the crime of larceny." Commonwealth v. St. Hilaire, 470 Mass. 338, 345 (2015). See Commonwealth v. James, 1 Pick. 375, 383 (1823) (jury's guilty verdict "well warranted, if, at the time the defendant took [the owner's property], [it was] not lawfully in [the defendant's] possession with the consent of the owner"). A traditional prosecution for larceny by stealing involves a trespassory taking, or a situation where "the lack of consent is so obvious from the circumstances that it is unnecessary to prove this fact by direct evidence." St. Hilaire, supra at 344 n.7. Compare Commonwealth v. Lent, 46 Mass. App. Ct. 705, 708

4

(1999) (taking of victim's backpack during attempted kidnapping), with Mills, 436 Mass. at 394 (filing false earnings reports with retirement board not "a trespassory taking of money" to support larceny by stealing conviction).

This was a business relationship. The money provided to the defendant was payment for his work, both completed and anticipated. There was no lack of consent or unlawful taking and carrying away of property. Compare Commonwealth v. Watterson, 99 Mass. App. Ct. 746, 754-755 (2021) (larceny conviction affirmed where victim expressed "disapproval and explicit nonagreement" to pay excessive fee for work performed).

2. Intent. "One who takes property without the authority of the owner and so uses or disposes of it as to show indifference whether the owner recovers possession may be found to intend to deprive the owner of it permanently." Commonwealth v. Salerno, 356 Mass. 642, 648 (1970).

Intent has traditionally been measured at the time of the taking, see Commonwealth v. Titus, 116 Mass. 42, 44-45 (1874), although the law permits some flexibility in this analysis. See Salerno, 356 Mass. at 648. Often, intent cannot be established by direct evidence, but "instead must be proved by inferences drawn from evidence of relevant circumstances. Such inferences need not be necessary or inevitable, only reasonable and

5

possible.  However, the result may not be a product of conjecture or speculation, or the piling of inference upon inference" (citations omitted).  Commonwealth v. Jerome, 56 Mass. App. Ct. 726, 732 (2002).

Here, the complainant gave the defendant the money.  The defendant did not take the money and run.  Contrast Commonwealth v. Flynn, 167 Mass. 460, 463 (1897) (larceny conviction affirmed where complainant retained title in money voluntarily given to defendant who did not return change as agreed).  Rather, after the first payment, he purchased materials for the project and brought them into the defendant's home, where he did work.  During the project, the defendant purchased items and tools that he left in the complaint's home, and he provided materials for the lighting and cabinetry work as contracted.  The defendant continued working after each of the complainant's payments.  Even viewed in the light most favorable to the Commonwealth, the evidence does not support an inference that the defendant had a "specific intent to deprive [the complainant] of the property permanently" (citation omitted).  Commonwealth v. Liebenow, 470 Mass. 151, 156 (2014).

The Commonwealth maintains that the jury could have inferred the defendant's intent from his failure to complete the work or to repay the complainant.  See Commonwealth v. Rubin,

6

165 Mass. 453, 455-456 (1896) (evidence of defendant's subsequent acts is relevant to intent "exist[ing] from the beginning").  We do not suggest that the defendant's behavior was honorable or appropriate, but absent other evidence that the defendant possessed the requisite intent at the time he received the payments, see Flynn, 167 Mass. at 464, the defendant's failure to perform is, on its own, insufficient to show intent in these circumstances.  Compare Commonwealth v. Donovan, 395 Mass. 20, 26 (1985) (evidence of construction, placement, and removal of phony night deposit box on wall of bank sufficient to allow jury to find intent to permanently deprive depositors of cash); Watterson, 99 Mass. App. Ct. at 747-748, 754-755 (intent to steal shown by evidence that defendant charged home owners over ten times estimate to fix furnace, defendant claimed charge was "flat rate" only after home owners objected to price, and defendant had pattern of overcharging and not completing work); Commonwealth v. Bonilla, 89 Mass. App. Ct. 263, 263-264 (2016) (evidence that defendant knew he could not honor bank deposit contracts when he entered them).  "While it is true that the complainant was ill-used, and that the defendant failed to comply with many of his obligations prior to the falling through of the transaction, we conclude there was insufficient evidence [of intent] to show" that the defendant was guilty of larceny

7

beyond a reasonable doubt (footnote omitted).  Commonwealth v. True, 16 Mass. App. Ct. 709, 713 (1983).[1]

                                    Judgment reversed.

                                    Verdict set aside.

                                    Judgment for the defendant.

                                    By the Court (Massing,
                                      Hershfang & Tan, JJ.[2]),

                                    _Paul Little_

                                    Clerk

Entered: June 6, 2025.

---

[1] As we conclude that the defendant was entitled to a required finding of not guilty, we do not reach the other issues raised in his appeal.

[2] The panelists are listed in order of seniority.

8